64 So.2d 317 (1953)
DREXEL et al.
v.
CITY OF MIAMI BEACH.
Supreme Court of Florida, en Banc.
February 24, 1953.
Rehearing Denied April 14, 1953.
*318 Caldwell, Parker, Foster, & Wigginton, Tallahassee, and A.C. Dressler, Miami, for appellants.
Ben Shepard and Joseph A. Wanick, Miami, for appellee.
THOMAS, Justice.
This appeal brings us for decision the correctness of the chancellor's dismissal of a bill for declaratory decree.
The appellants owned certain property on which they proposed to erect a multiple-level motorcar parking garage. They submitted to the city officials plans for the building and applied for a permit to proceed with the construction. The application was entertained at two meetings of the city council. At the first of these meetings the council voted against granting the permit; at the second a motion to rescind the previous action and to grant the permit was defeated by a tie vote.
The appellants then brought this suit to attack the ordinance regulating the construction of such buildings and upon final hearing the chancellor, basing his decision on the bill and answer and the testimony he had heard, dismissed the bill.
The relevant ordinance is numbered 973 which amended ordinance numbered 289. The portion of it material to this controversy contains the provision that in a designated area no multiple-level automobile parking garage shall be built except upon "approval and permit by the City Council * * * after a public hearing at which due consideration shall be given to the effect upon traffic of the proposed use * * *."
The first meeting of the council was evidently intended as the "public hearing" required by the ordinance. In so much as the minutes of that meeting relate to appellants' application we find a record only of the presentation of the application, the vote, the observation of one councilman that the site was suitable for the purpose, and the opinion of another councilman that "he was not convinced that a multiple-level garage was needed at this location * * *." There is no reference whatever in the minutes to the problem of traffic. Relevant minutes of the second meeting, at which the applicant again appeared to ask the council to reconsider his application, disclose that a motion of a councilman to this end was made and was followed by the suggestion of one of the body that the ordinance regulating such buildings should be rescinded and the whole subject re-examined, and his declaration that he would vote against any permit until the council had "had an opportunity to go into the matter further." There appears also the statement of another councilman that he had opposed the garages "all along" and still thought the multiple-level affairs were detrimental, some more than others. Some hotel owners who were present objected to the permit, but their reasons were not recorded. That was all. So far as we know no discussion was had at this meeting either, of traffic questions.
In the city's answer all allegations of the bill were admitted or categorically denied so upon appearance of the case before the chancellor for trial the issues, raised by the denials, were limited to the suitability of the property for the proposed improvement; the recommendation of the Citizen's Planning Committee that the construction of such parking garages be encouraged; the deprivation of appellant's property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States and Section twelve of the Declaration of Rights of the Constitution of Florida; the capriciousness and unreasonableness of the city's action in refusing the permit; and the validity of the part of the ordinance to which we have already alluded.
The testimony was devoted partly to the character of the property and partly to the adverse traffic situation at the site. The chancellor was given the attitude of those who favored the appellant's position and those who opposed it, but nothing developed to elaborate on the information gained from the minutes about any "consideration" having been given by the council "to the effect upon traffic of the proposed use * * *."
But we do not propose to base our decision of the constitutional question on the transaction reflected in the meager minutes or, for that matter, on the narrow allegations *319 of fact that formed a channel for the testimony introduced before the chancellor. The right of the appellants should be determined, and the infringement upon them gauged, by the language of the ordinance itself, which we have already quoted.
We think a city council may not deprive a person of his property by declining a permit to erect upon it a certain type of garage where the only restriction on the use of the police power is that it shall not be exercised before "due consideration" is given by someone, presumably the councilmen, to the effect of the building upon traffic. Both the quoted words, as well as their synonyms, could be construed to allow all manner of latitude in the grant of a permit in one case and the denial of a permit in a similar one, and would give every opportunity for the exercise of the power with partiality. Such laxness and inexactness in a delegation of the power is not sanctioned by the courts.
We hasten to add that there is nothing in this record to indicate that any favoritism has been exhibited by the members of the City Council of Miami Beach, or insinuation, or innuendo even, that such was the case. But that is not the point. An ordinance restricting the lawful use of property should "`not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens * * *'" who would comply with the regulations. [Emphasis added.] "`City of Richmond v. Dudley, 129 Ind. 112, 28 N.E. 312, 13 L.R.A. [587], 589, * * *.'" Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406, 408.
The present ordinance could easily become such an instrument of discrimination by a majority of the councilmen giving what each might think "due consideration" to traffic problems and thereafter denying a permit in one instance while granting a permit in a less meritorious case, though acting conscientiously in both. This would be possible because no uniform rules or regulations are defined to remove the sphere of action from the influences of whim or caprice. See City Council of Montgomery v. West, 149 Ala. 311, 42 So. 1000, 9 L.R.A., N.S., 659.
The Supreme Court of Florida decided the matter in a relatively recent opinion where it was remarked that "The generally accepted rule is to the effect that an ordinance which vests in municipal authorities arbitrary discretion to grant or revoke a license to carry on an ordinarily lawful business, without prescribing definite rules and conditions for the guidance of the authorities in the execution of their discretionary power, is invalid." Permenter v. Younan, 159 Fla. 226, 31 So.2d 387, 389.
In the present ordinance there is found no guide whatever to aid the councilmen in deciding what permits should, and what permits should not, be granted. Reading the ordinance in a light most favorable to the city's position, each councilman was accorded the privilege of deciding in his own mind whether he had duly considered the traffic problem and when a majority of councilmanic minds concluded that such consideration had been duly given and that the proposed building would complicate traffic conditions, the composite thought would ripen into a power that would take away property. This, in our opinion, would be doing so in violation of the guaranties of the State and United States Constitutions.
The uncertainty of the terms of the law is aptly illustrated by what actually happened in this case. One councilman stated with admirable candor that he would vote against all applications until the matter had been re-examined; another that all along he had been against such buildings as appellants wished to construct. Had either of these men been obligated to follow a definite pattern or certain rules and regulations designed to govern them in the exercise, with their fellows, of the power, each might well have subordinated his individual opinion to the requirements of governing law and voted to grant the permit. In such case the vote would have been the opposite and the use of the property in the manner desired by the owner would have been officially approved.
No pattern or uniformity of plan can be gleaned from the ordinance that would save the property owner from arbitrary discrimination or capricious action, or, for that *320 matter, that would protect the councilman from the charge that he was acting in such fashion.
We are constrained to hold that the part of the ordinance under attack is invalid so the decree is 
Reversed.
HOBSON, C.J., and TERRELL, SEBRING, ROBERTS and MATHEWS, JJ., concur.
DREW, J., not participating.