297 So.2d 74 (1974)
The CITY OF ST. PETERSBURG, Florida, a Municipal Corporation, et al., Appellants,
v.
Richard H. SCHWEITZER, III, et al., Appellees.
No. 73-136.
District Court of Appeal of Florida, Second District.
April 24, 1974.
Rehearing Denied June 17, 1974.
Carl R. Linn, Chief Asst. City Atty., St. Petersburg, for appellants.
John T. Allen, Jr., and Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, for appellees.
PER CURIAM.
This is an appeal from a peremptory writ of mandamus directing the City of St. Petersburg and its Environmental Planning and Development Commission to approve the appellees' site plan and to issue them a building permit authorizing construction pursuant to the site plan.
Appellees were the owners of property within a residential area zoned as R-4 in the City of St. Petersburg. Among the principal uses and structures which were permitted within that zone were family dwellings and multiple family dwellings *75 having up to and including ten dwelling units. The zoning code also provided for several special use exceptions in the R-4 zone which could be permitted by the Planning Commission. Specifically, the ordinance read as follows:
"SPECIAL EXCEPTIONS PERMISSIBLE BY THE PLANNING COMMISSION
After public notice and hearing, and subject to appropriate conditions and safeguards, the Planning Commission may permit:
* * * * * *
2. Multiple family dwellings with more than 10 dwelling units, and Planned Groups of residential structures on a single parcel, with minimum interior side yards of twenty (20) feet, for review of the site plan in terms of requirements of this Chapter and such features as the manner of distribution of open space, landscaping effectiveness and utility of the parking arrangements, and percent of required parking area that might temporarily be devoted to landscaping; the siting and length of buildings to control row-type developments; and, general amenities to relate development to compliment surrounding area character.
* * * * * *"
(emphasis supplied)
Appellees applied to the Environmental Planning and Development Commission (successor to the Planning Commission and referred to herein by that name) for a special exception to permit the erection of several multi-story apartments containing a total of seventy-two units. The professional staff of the Planning Commission filed a report recommending approval of the site plan subject to compliance with eight items involving such matters as landscaping and the location of an entrance drive. Appellees agreed to these eight suggestions. Following a public hearing, the Planning Commission denied the application. An appeal was taken to the City Council which, in turn, referred the matter back to the Planning Commission for reconsideration.[1] The Planning Commission again rejected the application. On appeal, the City Council upheld the action of the Planning Commission.
Apparently, the site plan was within those requirements of the zoning code applicable to the construction of a seventy-two unit apartment project. It is obvious that the objections of the Planning Commission were not founded upon the site plan, itself, but rather upon a concern over the effect the project might have upon the surrounding areas. Thus, the minutes of one of the meetings of the Planning Commission reflect that the application was rejected in reliance upon a "procedure" previously adopted by the Commission which read:
"Specifically, the Commission may consider its impact on ground cover, land, air, water, noise; the demand for services such as those associated with sewage, water, drainage, garbage, trash, transportation, public parking, electric power, communications security; the need for parks, recreational facilities, waterfront access, schools, medical services; and in effect on social and economic health and viability created by the density of population. The Commission may be influenced by any or all of these factors to approve, reject, or defer for modification of the item."
The appellees filed a complaint premised upon theories of certiorari, mandamus, declaratory judgment and injunction. Citing Drexel v. City of Miami Beach, Fla. 1953, 64 So.2d 317, and North Bay Village v. Blackwell, Fla. 1956, 88 So.2d 524, the trial *76 court concluded that the zoning ordinance contained insufficient standards to guide the Planning Commission in determining whether to grant or deny the special exception. Having concluded that the Planning Commission had no discretion in this matter and since the site plan was acceptable, the court issued a writ of mandamus directing the appellants to permit the construction of the apartment project.
Appellants first contend that mandamus was an improper remedy. Primarily, their argument is premised upon the well-established principle that mandamus will only lie to compel a non-discretionary act. E.g., Hunter v. Solomon, Fla. 1954, 75 So.2d 803. Appellees' position might have been better asserted under its count for declaratory relief. Nevertheless, since in construing the ordinance the lower court concluded that the Planning Commission had no discretion, we will consider the matter as having been properly presented. See City of West Palm Beach v. State, 1947, 158 Fla. 863, 30 So.2d 491.
Turning now to the merits, the Supreme Court in North Bay Village v. Blackwell, supra, said:
"... [T]here now seems to be little doubt that a zoning ordinance must prescribe definite standards for the guidance and control of the building inspector, the zoning officials and indeed the municipal council, when by the ordinance it reserves to itself various administrative zoning powers. An ordinance whereby the city council delegates to itself the arbitrary and unfettered authority to decide where and how a particular structure shall be built or where located without at the same time setting up reasonable standards which would be applicable alike to all property owners similarly conditioned, cannot be permitted to stand as a valid municipal enactment."
The ordinance in question provides that the Planning Commission "may" grant special exceptions, but there are simply no standards set forth by which the Commission must be guided in determining whether or not to grant a particular exception. Appellants contend that the "procedure" or policy statement adopted by the Commission represented sufficient guidelines. Assuming, without deciding, that the language might suffice,[2] appellants' reliance thereon is misplaced because the guidelines required by Drexel and North Bay Village must be established by the legislative authority in the ordinance itself. Hence, the trial court properly held that under the principles of Drexel and North Bay Village, the authorization given to the Planning Commission to grant special exceptions was an unlawful delegation of authority.
The question which remains is that once it was determined that the Planning Commission had no authority to reject the application for special exception, did it necessarily follow that the application must automatically be granted?
To properly answer this question, it is necessary to understand the nature of a special exception. In Mayflower Property, Inc. v. City of Fort Lauderdale, Fla.App. 2d, 1962, 137 So.2d 849, this Court said:
"... An `exception' is a departure from the general provisions of a zoning ordinance granted by legislative process under express provision of the enactment itself. If certain facts or circumstances specified in the ordinance are found to exist, then either on a direct application, or on an appeal from an administrative order enforcing the zoning ordinance, a Board of Adjustment may grant an exception... ."
In Volume 2 of Rathkoff on The Law of Zoning and Planning, several cases are cited in which the court held that where the *77 ordinance prescribed no standards, an exception could not be granted.[3] The author then states:
"This is undoubtedly a better rule; the special exception use was intentionally not made a permitted use per se but only conditionally and if the conditions are invalid, it should not be permitted until the legislature creaates valid standards."
In Fernald v. Bassett (1966), 107 N.H. 282, 220 A.2d 739, the court held that where the standards under which a board may grant a special exception are insufficient and, therefore, invalid, the conditional use becomes a prohibited one since the obvious reason for making it a conditional use was to prohibit it in the absence of the specified approval.
Likewise, in Craver v. Zoning Board of Adjustment (1966), 267 N.C. 40, 147 S.E.2d 599, the court stated that if the standards for the granting of a conditional use permit were too indefinite, the board would be unable to grant it and the applicant would become subject to the terms of the ordinance which would not permit the use as of right. See also State v. City of Winchester (Mo. 1966), 400 S.W.2d 47; Gaudet v. Economical Super Market, Inc. (1959), 237 La. 1082, 112 So.2d 720.
It can be argued that the word "may" in the preamble of the special exception portion of the ordinance contemplates that the only authority being delegated to the Planning Commission over applications for multiple family dwellings in excess of ten units is with respect to the approval of the site plan as referred to in subsection 2. However, we cannot accept this interpretation because the ordinance relating to the R-4 zone uses the word "may" in a number of instances in which it purports to permit the Planning Commission or the Board of Adjustment to authorize certain specified uses, without any qualifications whatsoever. It is more logical to assume that the drafters of the ordinance intended that even though the site plan was subject to the Commission's approval, the Commission had the right to determine whether or not to authorize the exception in the first place. The head of the professional staff of the Commission supported this position when he said that the staff's recommendation of the site plan would be applicable if the Commission decided to grant the exception.
Keeping in mind the purpose behind the enactment of zoning regulations, we believe that the drafters of this ordinance intended only those uses specifically enumerated as "permitted principal uses" to be automatically permissible in the R-4 zone. It was contemplated that there could be circumstances under which the Planning Commission in its discretion could permit certain additional specified uses. The delegation of this responsibility to the Planning Commission failed because of the legal requirement to set forth specific standards to guide the Planning Commission in the exercise of its discretion. When the vehicle whereby the exception could be granted became invalid, the opportunity to obtain the exception was lost. In effect, the appellees have successfully attacked the validity of the very power, the exercise of which they sought to have the court compel.
In City Council, No. Miami Beach v. Trebor Const. Corp., Fla.App.3rd, 1971, 254 So.2d 51, our sister court held invalid as an improper delegation of authority that portion of a zoning ordinance which provided that residential structures could be built in certain areas zoned for business, but only when plans and specifications were submitted to the mayor and city council and approved by them. However, the court determined that the section in the ordinance permitting the building of residential structures in certain business areas was not so linked with the invalid provision that it could be said that the entire section would not have been enacted without *78 the invalid provision. Only a small portion of the ordinance is quoted in the opinion. Therefore, we cannot tell whether that case is distinguishable because of differences in the wording of the ordinances.
In any event, considering the ordinance of the City of St. Petersburg in its entirety, we do not believe the special exception provision of the R-4 zone would have been enacted without the invalid provision. To state it differently, we do not feel the ordinance contemplated that the special use exception for multiple family dwellings in excess of ten units should, in every event, be approved.
Since the special exception provision for the R-4 zone in the ordinance, as then constituted, was invalid, the appellees were not entitled to the special exception. Accordingly, the peremptory writ of mandamus is hereby quashed.
McNULTY, Acting C.J., and BOARDMAN and GRIMES, JJ., concur.
NOTES
[1] The zoning ordinance had recently been amended in such a manner as would preclude appellees from building seventy-two units on the land, but the City Council determined that appellees had filed their application in time to have it considered under the ordinance as it existed prior to the amendment.
[2] See 58 A.L.R.2d 1083 for a summary of cases in which the courts have passed upon the validity of the specific language of various zoning ordinances which authorize the granting of special exceptions by the zoning officials.
[3] Page 54-21, footnote 10.