366 So.2d 146 (1979)
ABC LIQUORS, INC., a Florida Corporation, Appellant,
v.
CITY OF OCALA, a Florida Municipal Corporation, Appellee.
No. II-195.
District Court of Appeal of Florida, First District.
January 16, 1979.
Theodore L. Tripp, Jr. and Tobias Simon, Miami, for appellant.
*147 Seymour H. Rowland, Jr., Ocala, for appellee.
BOYER, Acting Chief Judge.
Appellant, plaintiff in the trial court, appeals a final judgment upholding the validity of an ordinance of the City of Ocala relating to the locations in that City of establishments for dispensation of alcoholic beverages.
The appellant, ABC Liquors, Inc., (hereinafter ABC) is a duly authorized licensed vendor of alcoholic beverages, whose license permits the retail sale of alcoholic beverages both for consumption on the premises as well as package sales for consumption off the premises.[1]
Pursuant to general law, the City of Ocala, has the power to adopt, and has adopted, a comprehensive zoning ordinance through which it controls the location of various types of commercial enterprise within the geographical confines of the municipality. Pursuant to that comprehensive zoning scheme, the City has created "community business" or "B-2" zones which:
is intended primarily to meet the shopping and limited service needs of several neighborhoods or a substantial territory. Retail stores are intended to include convenience, fashion and durable goods.[2]
The zoning code establishes those types of business which are permitted to operate in a B-2 zone. Among the permitted business activities are, inter alia, the retail sale of beer, ale, wine, and liquor, both for consumption on and off the premises. ABC did not contend before the trial court, and does not contend here, that those zoning laws are either unreasonable or violative of any rights guaranteed to ABC by the laws or Constitution of this State, or the United States. However, the City has gone beyond those general zoning powers in controlling the location from which the retail sale of alcoholic beverages may be consummated. It is that additional regulatory system which gave rise to the litigation in the court below, and which is challenged by this appeal.
Since 1934, the City had, by ordinance, specifically identified certain limited areas wherein retail sales of alcoholic beverages could be conducted. When that regulatory scheme was amended in 1976, establishments engaged in retail sale of alcoholic beverages were "grandfathered in" at their existing locations, and were permitted to maintain their operations under conditions analogous to "non-conforming uses." The enactment of City of Ocala Ordinances 933[3] and 1040[4] did away with the geographical areas within which the retail sale of intoxicating liquors was permitted and, subsequent to their enactment, no retail vendor of alcoholic beverages was permitted to operate anywhere within the City of Ocala, notwithstanding the land use zoning of the particular location in question, unless and until the retail sale of alcoholic beverages at such specific location was authorized by a special ordinance duly enacted by the City.[5]
Pursuant to the above mentioned regulatory scheme the City has, in effect, completely prohibited new licensees from engaging in the retail sale of alcoholic beverages without first obtaining the express permission of the City Council through a duly enacted ordinance. Although those vendors already in business are "grandfathered in" in their present location, § 3 of Ordinance 933 provides:
"any such existing vendor is prohibited from enlarging [his] business or moving to another location within the area involved or from transferring said business, *148 and no new license for the sale of alcoholic liquors, wines or beers, shall be issued for any location in the area involved if an existing licensed business is discontinued."
Thus, if a non-"grandfathered" vendor of alcoholic beverages wishes to engage in business even though he is duly licensed by the State, he must first obtain the consent of the Mayor and the City Council through the enactment of an ordinance. No standards exist to guide either the applicant or the Mayor and the City Council in determining which locations will be approved and which will be rejected.
ABC sought to locate one of its licenses on property zoned under the City's land use plan for operation of such an establishment. A proposed ordinance[6] was prepared and introduced before the City Council. The location selected by ABC was approved and adopted by a 3 to 2 vote of the members of the City Commission on February 2, 1977. However, on February 16, 1977, the Mayor of the City of Ocala vetoed the ordinance and, on March 1, 1977, the remaining members of the City Commission failed to override that veto. Therefore, proposed Ordinance 969 failed to pass, and ABC was prohibited from operating its business at the location selected by it.[7]
The parties stipulated that "but for the application of Section 4.1 and 4.2 of the Code of the City of Ocala, there would be no governmental prohibition or restriction against the sale of alcoholic beverages for consumption on or off the premises at the location contemplated by" ABC.[8]
A complaint was filed in the Circuit Court for Marion County, Florida, asserting that the additional restrictions imposed by the City on ABC, over and above the normal zoning requirements, were void and of no effect on the following grounds:
A. That there were no standards or criteria for securing the passage of these additional ordinances, and that the necessary approval is therefore subject to the whim, caprice and unbridled discretion of the members of the City Commission and the Mayor.
B. That the action of the City in denying ABC the ability to sell alcoholic beverages, pursuant to a license duly issued by the State, and in a location specifically zoned for such sales, was beyond the municipal power of the City.
C. That the regulatory scheme, and the City's actions thereunder, denied ABC's Constitutional right to Due Process and Equal Protection of the Law.
A pre-trial conference was held and, by pre-trial order, the court recognized that there were no genuine issues of fact and that the controversy should be resolved as a matter of law. The parties entered a pre-trial stipulation of facts and submitted written memoranda of law to the trial court. Following consideration of their written memoranda, the trial court entered its order dated November 29, 1977,[9] in which it granted a "judgment on the pleadings and on the facts" against ABC, with prejudice, thereby upholding the validity of the challenged ordinance.[10]
This appeal ensued.
ABC presents and argues two points in its briefs.[11] However, our disposition of the *149 case on the second point renders it unnecessary for us to consider the first.
The dispensation of alcoholic beverages is a highly regulated industry. Nevertheless the constitutional guaranty of equality before the law assures that every citizen, whether natural or corporate, be treated equally.[12] To assure that right, regulations must be standard and criteria reasonably certain. An applicant for approval of a location must be in a position to determine the requirements and must be afforded an opportunity to comply with them. The requirements must be of uniform application. Once the requirements are met the governing body may not refuse the application. Any standards, criteria or requirements which are subject to whimsical or capricious application or unbridled discretion will not meet the test of constitutionality.
This court, in City of Jacksonville v. Goodbread, 331 So.2d 350 (Fla. 1st DCA 1976) held invalid ordinances of the City of Jacksonville which divided the City into different zones and then established differing distance requirements for the location of liquor licenses in the several zones. We there said:
"* * * Here the Code establishes three different and unequal distance limitations within the City of Jacksonville upon the location of a liquor license within the single uniform zoning classification of Commercial Intensive. We hold that said classification is arbitrary and discriminatory and, therefore, void. [citation omitted] While it is not the function of the court to rezone property or to usurp the legislative powers of government, it is the court's function to determine at which point zoning restrictions become arbitrary. [citation omitted]" (331 So.2d at page 352)
In Broward County v. Narco Realty, Inc., 359 So.2d 509 (Fla. 4th DCA 1978), our Sister Court of the Fourth District considered a case wherein Narco Realty had complied with all of the legal requirements for platting certain land but the County Commission refused to approve the subdivision plat, contending that notwithstanding Narco's compliance with the platting requirements the Commission yet had discretion to approve or refuse approval of the plat. The appellate court there affirmed a peremptory writ of mandamus issued by the trial court commanding the Commission to approve the subdivision plat, saying:
"All persons similarly situated should be able to obtain plat approval upon meeting uniform standards. Otherwise, the official approval of a plat application would depend upon the whim or caprice of the public body involved. * * *" (359 So.2d at page 510)
The Supreme Court of Florida stated in Eskind v. City of Vero Beach, 159 So.2d 209 (Fla. 1963):
"The employment of the police power will not be upheld when its exercise imposes an unreasonable restriction on private business on the pretense of promoting the community interests. [citations omitted] Neither a state nor a city can arbitrarily interfere in private businesses or impose unreasonable and unnecessary restrictions upon them, under the guise of protecting the public. [citations omitted] ... We have the view that the subject ordinance is nothing less than an attempted exercise of the police power to restrict competition between favored and unfavored segments of the same business activity. If expanded to other fields, such an exercise of power could be destructive to the competitive, free enterprise *150 system. [citations omitted]" (159 So.2d at page 212)
The record before us clearly reveals that there are absolutely no standards nor guides by which the governing body of the City of Ocala may determine whether or not an ordinance will be passed creating an exception to the ordinance challenged sub judice, and thereby permitting the location of an establishment for the dispensation of alcoholic beverages. Whether or not such an ordinance will be passed, viz.; whether or not the establishment will be permitted, is not therefore controlled by any definable process but is purely at the discretion of the Mayor and the City Council. The governing body as well as the applicant is completely without standards for the determination as to who will and who will not be allowed to enter the field of alcoholic beverage sales.
In North Bay Village v. Blackwell, 88 So.2d 524 (Fla. 1956), a case involving a building ordinance, the Supreme Court took the occasion, while reviewing a municipal ordinance, "to state the position of the court unequivocally on the problem at hand".
"With reference to the problem before us, there now seems to be little doubt that a zoning ordinance must prescribe definite standards for the guidance and control of the building inspector, the zoning officials and indeed the municipal counsel, when by the ordinance it reserves to itself various administrative zoning powers. An ordinance whereby the city council delegates to itself the arbitrary and unfettered authority to decide where and how a particular structure shall be built or where located without at the same time setting up reasonable standards which would be applicable alike to all property owners similarly conditioned, cannot be permitted to stand as a valid municipal enactment." (88 So.2d at page 526)
Nor is it necessary that the record reveal that the governing body or its members have in fact acted capriciously or arbitrarily. It is the opportunity, not the fact itself, which will render an ordinance vulnerable. In Drexel v. The City of Miami Beach, 64 So.2d 317 (Fla. 1953), the Court was confronted with an ordinance which, like the ordinance here challenged, provided that certain businesses (in that case multiple level parking garages), would not be allowed "except upon `approval and permit by the City Council ... after a public hearing at which due consideration shall be given to the effect upon traffic of the proposed use ...'". Although the ordinance challenged in that case had more standards built into it than the City's ordinance, sub judice, those standards were not sufficient to save the ordinance from constitutional challenge. While the testimony in the trial court was somewhat limited with regard to the consideration given by the council by "effect upon traffic of the proposed use," the Court stated that:
"But we do not propose to base our decision of the constitutional question on the transaction reflected in the meager minutes or, for that matter, on the narrow allegations of fact that formed a channel for the testimony introduced before the chancellor. The right of the appellants should be determined, and the infringement upon them gauged, by the language of the ordinance itself, which we have already quoted.
"We think a city council may not deprive a person of his property by declining a permit to erect upon it a certain type of garage where the only restriction on the use of the police power is that it shall not be exercised before `due consideration' is given by someone, presumably the councilmen, to the effect of the building upon traffic. Both the quoted words, as well as their synonyms, could be construed to allow all manner of latitude in the grant of a permit in one case and the denial of a permit in a similar one, and would give every opportunity for the exercise of the power with partiality. Such laxness and inexactness in a delegation of the power is not sanctioned by the courts.
"We hasten to add that there is nothing in this record to indicate that any favoritism has been exhibited by the members of *151 the City Council of Miami Beach, or insinuation, or innuendo even, that such was the case. But that is not the point. An ordinance restricting the lawful use of property should `not admit the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens . .' who would comply with the regulations. [Emphasis in original] [citations omitted] "The present ordinance could easily become such an instrument of discrimination by a majority of the councilmen giving what each might think `due consideration' to traffic problems and thereafter denying a permit in one instance while granting a permit in a less meritorious case, though acting conscientiously in both. This would be possible because no uniform rules or regulations are defined to remove the sphere of action from the influences of whim or caprice. [citations omitted]
* * * * * *
"In the present ordinance there is found no guide whatever to aid the councilmen in deciding what permits should, and what permits should not, be granted. Reading the ordinance in a light most favorable to the city's position, each councilman was accorded the privilege of deciding in his own mind whether he had duly considered the traffic problem and when a majority of councilmanic minds concluded that such consideration had been duly given and that the proposed building would complicate traffic conditions, the composite thought would ripen into a power that would take away property. This, in our opinion, would be doing so in violation of the guaranties of the State and the United States Constitutions." (64 So.2d at pages 318-319)
The City of Ocala by virtue of the here challenged ordinance has chosen to permit, on a case by case basis, the City Council and Mayor to decide when and where a retail vendor of alcoholic beverages, duly licensed by the state, may open and operate his establishment. The Planning and Zoning Department of the City has considered all relevant zoning criteria and allowed alcoholic beverage vendors to operate in any "B-2" or "community business" zone. The approval of the Council and Mayor, required in addition to the proper zoning, is granted or denied on a case by case basis without any standards or criteria to guide either the applicants or the City officials. Such a regulatory scheme does not comport with constitutional standards.
We have not overlooked the opinion of the Supreme Court of Florida rendered in Permenter v. Younan.[13] However, the holding of that case is distinguishable and therefore not dispositive sub judice. In the Permenter case, although the challenged ordinance related to the issuance and transfer of licenses, the facts of that case involved renewal. The ordinance vested discretion in the Municipal Inspector to refuse issuance or transfer when "in his judgment, the issuance or transfer * * * would be contrary to public policy or the welfare of the community". Therefore, though vague, the ordinance did provide for some standards. Further, the facts recited in the opinion reveal that the licensees there did not meet those standards in that they were not of good moral character and had been guilty of various violations of law and misconduct. Such are not the stipulated facts sub judice.
The Permenter case is also distinguished in that there the applicable ordinance, while vesting discretion in the Municipal Inspector, provided for a right to appeal his denial to the License Committee of the City Council. That that provision was considered material by the court is revealed by the holding of the majority in which the following language was employed:
"No decision of the Municipal Inspector under the provisions of the ordinances involved here is a finality. The applicant for license has the right to establish his personal fitness to the inspector; if rejected, he has the right to appeal to the License Committee of the Council, and *152 there to be heard. Even then, if such License Committee refuses to override the action of the Municipal Inspector, because of arbitrary discrimination, the applicant may institute mandamus action to compel issuance or renewal of license. "Mandamus not only lies to compel issuance of a liquor license or permit where such issuance is mandatory or merely ministerial, but also where the licensing authority has abused its discretion or acted arbitrarily. 48 C.J.S., Intoxicating Liquors, § 160, page 262.
"Thus, an applicant for license under the particular provisions of the ordinances here involved has the opportunity to have his day in court." (31 So.2d at page 390).
No such procedure is provided for in the subject ordinance of the City of Ocala.
Neither may the City find solace in this Court's opinion in Central Florida Distributing Company v. Jackson, 324 So.2d 143 (Fla. 1st DCA 1976). There the relevant issue was whether the challenged administrative rule was authorized by the applicable statute.[14] Although the author of that opinion cited Permenter v. Younan, supra, as authority for a recital that where the business engaged in is a privilege rather than a right it is not essential that "a specific prescribed standard"[15] be expressly stated in the legislation, the author also stated and held that:
"* * * The plain and specific language of Section 561.42 clearly provides sufficient standards for the adoption of Rule 7A-4.18."[16]
Thus it appears from a careful analysis of both the Central Florida Distributing Company case and the Permenter case that in neither did the Courts condone the total absence of any standards or procedures for the guidance or control of discretion.
Pursuant to Rule 9.330(a), Florida Rules of Appellate Procedure, the time for filing any motion for rehearing or for clarification of this decision, if any, by any party, shall be filed within eight days from date hereof.
The final judgment here appealed[17] is reversed and we remand for further proceedings not inconsistent with this opinion.
BOOTH, J., concurs.
SMITH, J., dissents.
SMITH, Judge, dissenting:
The ordinances of the council of the City of Ocala reserve to the council the power to approve or disapprove the establishment of new locations for the sale of alcoholic beverages in areas which are generally designated for such establishments by conventional zoning ordinances. I consider that the council's power so to regulate liquor businesses, absent arbitrary and discriminatory prohibitions in fact, was established by Permenter v. Younan, 159 Fla. 226, 31 So.2d 387 (1947), and that this court properly adhered to that rule in Central Florida Distributing Co. v. Jackson, 324 So.2d 143, 145 (Fla. 1st DCA 1975):
Here, where the business engaged in is a privilege, rather than a right, it is not essential that a specific prescribed standard be expressly stated in the legislation. Permenter v. Younan, 159 Fla. 226, 31 So.2d 387 (1947).
The majority opinion would appear to be contrary to these decisions. I therefore dissent.
NOTES
[1] This cause was decided in the court below on a pre-trial stipulation entered into between the parties, since there are no issues of material fact. The factual basis for the controversy between ABC and the City is drawn from that pre-trial stipulation.
[2] § 22-11, Ocala City Code.
[3] Enacted September 21, 1976.
[4] Enacted October 4, 1977.
[5] Certain operations not germane to the present controversy are excepted from this regulatory scheme. Hotels, motels, private clubs, and similar operations are exempted in such fashion.
[6] Ordinance Number 969.
[7] It is stipulated that the location in question meets all zoning requirements for, and zoning regulations of the City.
[8] Nor are we here concerned with any issue as to fitness or conduct of the licensee, as was the situation in Permenter v. Younan, 31 So.2d 387 (Fla. 1947).
[9] The order here appealed.
[10] In its amended complaint ABC prayed "that the ordinances of the Defendant which form Section 4.1 and 4.2 of the Code of Ordinances of the City of Ocala, Florida, be declared void, null and of no effect and that the Defendant * * * be required to permit the Plaintiff to sell and dispense alcoholic beverages pursuant to its license at the locality [described in the complaint]."
[11] I. WHETHER MUNICIPALITIES HAVE GREATER AUTHORITY TO CONTROL THE LOCATION OF ALCOHOLIC BEVERAGE VENDORS THAN THE GENERAL ZONING POWER UNDER WHICH MUNICIPALITIES CONTROL THE LOCATION OF ALL LAWFUL BUSINESSES.

II. WHETHER THE CHALLENGED ZONING ORDINANCE, BY WHICH THE CITY COUNCIL MAY ALLOW OR PROHIBIT A LAWFUL BUSINESS FROM OPERATING IN THE CITY OF OCALA, WITHOUT PROVIDING ANY STANDARDS OR GUIDELINES FOR THE EXERCISE FOR THIS UNBRIDLED DISCRETION, IS VOID ON ITS FACE.
[12] Constitutional equality applies with equal vigor to privileges as well as rights. Indeed, under our constitution all persons have a "right" to equal treatment by the government and its subdivisions and agencies.
[13] Cited and mentioned in Footnote 8, supra.
[14] F.S. 561.42.
[15] Emphasis added.
[16] 324 So.2d at page 145. Emphasis added.
[17] In this opinion we have referred to a Final Judgment and the object of this appeal was obviously intended as such. However, we note that the instrument, while having all of the requisites of a Final Judgment, is entitled simply "Order" and the notice of appeal recites that the appeal is taken "to review the order of the circuit court of Marion County bearing date November 29, 1977".