518 So.2d 311 (1987)
FLORIDA MINING & MATERIALS CORPORATION, etc., Petitioner,
v.
CITY OF PORT ORANGE, etc., et al., Respondents.
No. 87-919.
District Court of Appeal of Florida, Fifth District.
December 3, 1987.
Rehearing Denied January 14, 1988.
James S. Morris of Coble, Barkin, Rothert, Gordon, Morris, Lewis & Reynolds, P.A., Daytona Beach, for petitioner.
Christopher W. Wickersham, Sr., of Becks, Becks & Wickersham, Daytona Beach, for respondents.
COBB, Judge.
The petitioner, Florida Mining and Materials Corporation, seeks certiorari review of a circuit court order upholding a determination by the City of Port Orange to deny its application for a special exception to construct a cement batch plant in a city district zoned for light industry. The relevant zoning ordinance in effect at the time of petitioner's application provided:
SECTION 720.00: LIGHT INDUSTRIAL (LI) DISTRICT.
720.01 PURPOSE AND INTENT: The purpose and intent of the Light Industrial district is to provide sufficient space in appropriate locations for limited industrial operations engaged in the fabricating, repair, or storage of manufactured goods of such value that no objectionable by-products of the activity (such as odors, smoke, dust, refuse, electromagnetic interference, noise in excess of that customary to loading, unloading and handling of goods and materials) are noticeable beyond the lot on which the facility is located.
720.02 PERMITTED USES: Manufacturing, processing, storage and distribution of goods and materials using processes and practices that do not involve hazardous materials, as defined by the Port Orange Fire Department, or result in impacts on adjoining properties as defined above. Also:
Airport and related activities
Bus garage and repair shop
Contractor's shop
Greenhouses, commercial, wholesale, retail
Laundries and linen services
Lumber yard
Motor vehicle towing and impoundment
Public utility station

*312 Truck and freight transfer terminal
Truck repair
Warehouse
Yacht repair
720.03 ACCESSORY USES: Accessory uses customarily incidental to the permitted principal uses.
720.04 SPECIAL EXCEPTIONS:

Flea Market (See Section 902.13)
Any manufacturing, processing, storage, or distribution of goods and materials not specifically allowed under Section 720.02 may be allowed by Special Exception.
Because a cement plant was not specifically designated a permitted use in the light industrial district under this zoning ordinance, petitioner applied for a special exception. The city's planning director was concerned about a potential traffic problem that might be caused by the cement trucks leaving the plant; petitioner's property is located more than 3/4 of a mile from an arterial roadway, Dunlawton Boulevard, and the cement trucks leaving petitioner's property would have to travel on residential streets to reach Dunlawton. The city's planning director recommended denial of the special exception, and also listed certain conditions that would have to be met by petitioner before the special exception would be minimally acceptable. As to the traffic problem, the planning director recommended that petitioner provide intersection improvements at Dunlawton Boulevard and the access road to it, Spruce Creek Road.
Following the planning director's recommendations, petitioner agreed to pay $15,000 to the city for installation of improvements at the intersection of Dunlawton Boulevard and Spruce Creek Road. At the hearing before the planning commission, the planning director stated that the noise factor and most other concerns had been sufficiently addressed by petitioner, but the traffic problem still remained. The planning commission recommended denial of the special exception request and the city council subsequently voted unanimously to follow the planning commission's recommendation. The circuit court denied the initial petition for writ of certiorari, stating that the council's decision was supported by competent and substantial evidence.
Petitioner argues that the circuit court did not apply the correct law because its application for the special exception met all of the applicable criteria of the relevant zoning ordinance. Petitioner cites cases which hold that once the requirements for a special exception have been met, the zoning authority must grant the special exception unless it finds that such would adversely affect the public interest. See Odham v. Petersen, 398 So.2d 875 (Fla. 5th DCA 1981), approved, 428 So.2d 241 (Fla. 1983); Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478 (Fla. 4th DCA 1975).
The city argues that the potential traffic problem was the major reason it determined that the cement plant would adversely affect the public interest. The city council apparently concluded that the proposed road improvements would not neutralize the adverse impact on the nearby residential neighborhood.
In Irvine v. Duval County Planning Commission, 495 So.2d 167 (Fla. 1986), the Supreme Court of Florida held that once the burden shifts to the zoning authority to prove that the special exception request adversely affects the public interest, the zoning authority must meet its burden by presenting competent, substantial evidence at a hearing, and such evidence must be made part of the record. Since petitioner was willing to follow the planning director's recommendations to make the special exception request acceptable, the burden shifted to the city to prove that the special exception would adversely affect the residential neighborhood. Although the city referred to the increased traffic on the nearby residential streets that would occur if the special exception were granted, the record shows that there are presently businesses in the light industrial district using large trucks which travel *313 on the nearby residential streets. For example, there is a beer distributor (Daytona Budweiser) and a battery company (Polychem) which use large tractor-trailer trucks with a licensed gross vehicle weight of 80,000 pounds. The licensed gross vehicle weight of petitioner's cement trucks is 64,000 pounds.
The significant fact is that the zoning district where petitioner's property is located is zoned for light industry. The city has created its own problem by zoning a light industrial district so near a residential area, with residential streets providing the only means of access to the main arterial road network. The city's decision to deny the special exception request was arbitrary in light of the large trucks from the other businesses which are permitted to use the nearby residential streets.
The granting or withholding of a permit to engage in a legitimate business should not depend on the whim or caprice of the permitting authority. See Effie, Inc. v. City of Ocala, 438 So.2d 506 (Fla. 5th DCA 1983), review denied, 444 So.2d 416 (Fla. 1984). One of the findings that the city must make before granting a special exception, according to its own zoning ordinance, is that the "traffic generated and its access and flow to the proposed use shall not adversely impact adjoining properties and the general public's safety." These criteria are vague, and can be used in a discriminating fashion to grant some special exception requests and deny others. In Drexel v. City of Miami Beach, 64 So.2d 317 (Fla. 1953), the Supreme Court held that an ordinance was void for insufficiency of standards upon which the city could exercise its discretionary authority. In that case, permits for parking garages could only be issued after a public hearing at which "due consideration" was to be given to the "effect upon traffic." The Supreme Court stated:
The present ordinance could easily become such an instrument of discrimination by a majority of the concilmen giving what each might think "due consideration" to traffic problems and thereafter denying a permit in one instance while granting a permit in a less meritorious case, though acting conscientiously in both. This would be possible because no uniform rules or regulations are defined to remove the sphere of action from the influences of whim or caprice.
64 So.2d at 319.
Unlike the appellants in Drexel and Effie, the petitioner in the instant case did not challenge the constitutionality of the city's zoning ordinance. However, the ordinances in all three cases can lead to an inequitable exercise of governmental zoning power due to the vague standards contained therein.
There was not any substantial, competent evidence in the instant case to distinguish petitioner's cement trucks from the other large trucks which use the residential streets; the planning director at the hearing before the planning commission merely stated, "We're still not convinced that the cement trucks don't have a special effect on traffic, compared to other trucks." The attorney for petitioner suggested that the cement trucks might not accelerate as quickly as the tractor-trailer trucks, but indicated that it would be easier for the cement trucks to turn at the main intersection.
The evidence in the record indicates that the proposed cement plant would be a satellite operation; there would be no overnight parking of cement trucks, but there would be a maximum of 18 round trips a day by petitioner's trucks. Normal hours of operation would be from 7:00 a.m. to 4:00 p.m. Petitioner's engineer stated that by using the Institute of Transportation Engineers' trip generation data, it is calculated that a truck terminal, which is a permitted light industrial use under the city's zoning ordinance, would generate ten times the traffic that a cement plant would generate.
*314 We find that the circuit court departed from the essential requirements of law in holding that substantial, competent evidence supported the city's decision to deny the special exception. Certainly there will be an increase in truck traffic on the nearby residential streets if the cement plant is allowed to be built. However, if the city wants to limit the use of large trucks on the nearby residential streets, it must utilize some uniform restriction applicable to all businesses whose large trucks travel on those residential streets.
Accordingly, we grant certiorari, quash the order of the circuit court, and remand for further proceedings consistent with this opinion.
CERTIORARI GRANTED.
DAUKSCH, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I would deny the petition for writ of certiorari. Sufficient evidence in the record supports the zoning authority's refusal to grant the special permit. Its denial was based on the adverse impact of cement trucks making a maximum of eighteen round-trips (or 36 trips) per day through a residential neighborhood.
Thus, in my view, the circuit court's order upholding the City's determination that granting the special exception would be contrary to the public interest does not represent a substantial departure from the essential requirements of law in this case,[1] and it should not be overturned. Certiorari should not be "used as a vehicle to obtain a second appeal."[2]
Petitioner concedes that the cement trucks are large vehicles that will be heavily loaded on at least half of the trips to and from the cement plant through the neighborhood. Noise and safety hazards will necessarily result from such traffic. In addition, the City established adverse effects from the projected wear and tear on Oak Street and Oak Place, which were designed to carry light residential traffic. It could also infer potential danger from the incompatibility of such traffic with pedestrians and bicyclists. Finally, the intersection with the arterial road at Spruce Creek and Dunlawton, where the trucks will exit the neighborhood, was described as "overburdened." Even with modification of the intersection, the city council found sufficient adverse impact to deny the permit.
The main thrust of petitioner's argument is that there are tractor trailers operating out of the industrial district where the cement plant will be located which are slower and heavier than the proposed cement trucks, and that they already have adversely impacted the residential neighborhood. Petitioner argues it would be unfair and arbitrary not to allow its trucks to add to the traffic congestion. However, the record shows there are presently only three tractor trailers operating out of the park, and there is no record basis to conclude the additional cement trucks will not have a substantial adverse impact due to their size and number.
Perhaps the City's location of the industrial district without adequate arterial access roads was bad judgment. However, having made one mistake, it should not be judicially barred from recognizing it and attempting to prevent considerable aggravation of the traffic problem. To hold that *315 nothing now can be done to limit traffic, completely removes "traffic generated and its access and flow" as a consideration for denying a special exception, despite the wording of the ordinance.[3] That is an extraordinary view and one at odds with the body of zoning law.[4]
NOTES
[1] City of Ormond Beach v. State ex. rel. Del Marco, 426 So.2d 1029 (Fla. 5th DCA 1983); The Florida Companies v. Orange County, Florida, 411 So.2d 1008 (Fla. 5th DCA 1982).
[2] Combs v. State, 436 So.2d 93, 96 (Fla. 1983); Henshaw v. Kelly, 440 So.2d 2 (Fla. 5th DCA 1983); rev. denied, 450 So.2d 486 (Fla. 1984).
[3] § 901.02 REVIEW CRITERIA AND REQUIREMENTS: When reviewing an application for special exception, the Planning Commission and City Council shall consider the following requirements and criteria:

1. Traffic generated and its access and flow to the proposed use shall not adversely impact adjoining properties and the general public safety.
* * * * * *
[4] Anderson, 1 American Law of Zoning, § 7.09 (1986).