743 So.2d 635 (1999)
WINDWARD MARINA, L.L.C., Petitioner,
v.
CITY OF DESTIN and The Destin City Council, Respondent.
No. 98-4665.
District Court of Appeal of Florida, First District.
November 17, 1999.
*636 Richard P. Petermann of Smith, Grimsley, Bauman, Pinkerton, Petermann & Wells, Fort Walton Beach; F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for petitioner.
David A. Theriaque and Steve Pfeiffer of David A. Theriaque, P.A., Tallahassee, for respondents.
WOLF, J.
Petitioner, Windward Marina, L.L.C. ("Windward"), challenges a circuit court order upholding the denial of its application for a final development order to construct a dry-dock marina near the mouth of Destin Harbor. Respondents, the City of Destin and the Destin City Council ("city"), based the denial of the development order on a determination that the proposed development would be incompatible with surrounding uses in that it would, given its location, create a boat navigation safety hazard at the mouth of the harbor. We agree with Windward that nothing in the city's comprehensive plan or in the land development code places a developer on notice that the amount of boat traffic generated by a proposed development will be considered by the city as a compatibility factor in determining whether a proposed development is consistent with surrounding uses and thereby consistent with the city's comprehensive plan; nevertheless, we conclude that the circuit court did not depart from the essential requirements of law in upholding the denial of the development order in this case. The city did have the authority to deny the development order based on its determination that the proposed development would have created a significant navigation safety hazard at the mouth of Destin Harbor. We, therefore, deny Windward's petition for certiorari review.
The scope of this court's review is limited to whether the circuit court departed from the essential requirements of law and whether the circuit court afforded the parties in the proceedings below procedural due process. See Haines City Community Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995); Martin County v. City of Stuart, 736 So.2d 1264, 1265 (Fla. 4th DCA 1999)(en banc); City of St. Petersburg v. Marelli, 728 So.2d 1197, 1198 (Fla. 2d DCA 1999); City of Jacksonville Beach v. Marisol, 706 So.2d 354, 355 (Fla. 1st DCA 1998); Metropolitan Dade County v. Blumenthal, 675 So.2d 598, 601 (Fla. 3d DCA 1995). While the circuit court's review of the city's denial of the development order included the component of whether competent substantial evidence supported the city's decision, this court's review of the circuit court's essentially appellate decision does not include an independent reevaluation of whether competent substantial evidence supported the city's denial of the development order. See Heggs, 658 So.2d at 530; Martin County, 736 So.2d at 1267; Marelli, 728 So.2d at 1198; Blumenthal, 675 So.2d at 601. Windward does not argue that it was denied procedural due process in the circuit court. Consequently, the only issue before this court is whether the circuit court departed from the essential requirements of law in upholding the city's denial of the development order.[1]
*637 The Local Government Comprehensive Planning and Land Development Regulation Act ("Growth Management Act") specifically provides,
After a comprehensive plan, or element or portion thereof, has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted.
§ 163.3194(1)(a), Fla. Stat. (1997). The City of Destin adopted a comprehensive plan in conformity with the Growth Management Act. See City of Destin, Fla., Ordinance No. 151. That plan includes the following provisions:
The City shall ensure the compatibility of adjacent and surrounding land uses. Land uses, as defined in Chapter 163, Part II, Florida Statutes ["Growth Management Act"], includes, but is not limited to, permitted uses, structures, and activities allowed within the land use category or implementing zoning district. Compatibility means a condition in which land uses or conditions can coexist in relative proximity to each other in a stable fashion over time such that no use or condition is unduly negatively impacted directly or indirectly by another use or condition. The compatibility of land uses is dependent on numerous development characteristics which may impact adjacent or surrounding uses. These include: type of use, density, intensity, height, general appearance and aesthetics, odors, noise, smoke, vibration, traffic generation, and nuisances.
. . . .
Compatibility shall be measured based on the following compatibility characteristics of the proposed development in relationship to surrounding development in the immediate area:
(a) permitted uses, structures and activities allowed within the land use category;
(b) building location, dimensions, height, and floor area ratio;
(c) location and extent of parking, access drives and service areas;
(d) traffic generation, hours of operation, noise levels and outdoor lighting;
(e) alteration of light and air; [and]
(f) setbacks and buffersfences, walls, landscaping and open space treatment. It is the intent of this policy to encourage design treatments that reflect consideration of adjoining and surrounding development and land use.
City of Destin, Fla., Ordinance No. 151, Chapter 7, Policy 7.A.4.6.p. (1990) (emphasis added). The city's land development code (LDC) implements the policies and goals of the comprehensive plan with even greater specificity, and the city's LDC includes compatibility factors which are identical to those contained in the comprehensive plan. See City of Destin, Fla., Ordinance 152, art. 7, § 7.09.02 (1997).
The city argues that boat traffic is included within the meaning of the "traffic generation" compatibility factor used to determine a proposed development's consistency with surrounding uses. Windward argues that boat traffic is not included within the meaning of the "traffic generation" compatibility factor such that a reasonable developer would have been fairly placed on notice that the city would consider the possible adverse impact a proposed development might have on boat traffic in determining the project's overall consistency with the city's comprehensive plan. We agree with Windward that neither the city's comprehensive plan nor its LDC expressly place developers on notice that the city will consider, and possibly deny a development order, based solely on the effect a proposed development will *638 have on boat traffic in an adjacent waterway.
The term "traffic generation" is not defined in either the Growth Management Act or the city's land use regulations. Therefore, to determine whether the word "traffic" as used in the term "traffic generation" includes boat traffic, we must look to the Growth Management Act as a whole. See Forsythe v. Longboat Key Beach Erosion, 604 So.2d 452, 455 (Fla. 1992). A review of the Growth Management Act, as well as the administrative rules adopted by the Department of Community Affairs for review of local government comprehensive plans, makes it clear that the word "traffic," when used alone in a municipality's comprehensive plan, applies only to land-based traffic and not to boat traffic. See § 163.3177, Fla. Stat. (1997); Fla. Admin. Code R. 9J-5.019 (1999).[2]
Our analysis does not, however, end there. The city's comprehensive plan states that compatibility with surrounding uses is dependent upon numerous development characteristics including not only "traffic generation," but also whether a proposed use will result in "nuisances" being maintained on the property in question. See City of Destin, Fla., Ordinance No. 151, Chapter 7, Policy 7.A.4.6.p. (1990). We read this reference to "nuisances" as indicating that in determining compatibility with surrounding uses, the city will consider whether a proposed development can co-exist with surrounding uses such that it does not constitute a public nuisance.
We are not unmindful of the case law that requires a local government's denial of a land development order to be based on specific criteria set forth in its duly enacted land use regulations. See Alachua County v. Eagle's Nest Farms, Inc., 473 So.2d 257, 259 (Fla. 1st DCA 1985). See also Powell v. City of Delray Beach, 711 So.2d 1307, 1310 (Fla. 4th DCA 1998). While a local government may deny a development order based on a determination that a proposed development would be inconsistent with the stated goals of the locality's comprehensive plan, see Franklin County v. S.G.I. Ltd., 728 So.2d 1210 (Fla. 1st DCA 1999),[3] a local government may not deny a development order based on criteria which are not specifically enumerated in its land use regulations. See Drexel v. City of Miami Beach, 64 So.2d 317 (Fla.1953). See also Effie, Inc. v. City of Ocala, 438 So.2d 506 (Fla. 5th DCA 1983); ABC Liquors, Inc. v. City of Ocala, 366 So.2d 146 (Fla. 1st DCA 1979). *639 We conclude, however, that these cases are inapplicable to the circumstances presented in this case for two reasons: (1) these decisions did not involve denials of development orders based upon findings of specific identifiable safety hazards; and (2) these decisions did not specifically address whether the term "nuisance," which has been well-defined in our law, is so impermissibly vague that it cannot be utilized by a local government in determining whether to deny approval for a proposed development.
The term "nuisance" has long been recognized as encompassing certain identifiable harms, including the impact a particular land use might have on the safety of the public as a whole, even though the determination of what may constitute a "nuisance" in any given circumstance will often be dependent upon the facts presented. See § 823.05, Fla. Stat. (1997)(defining a public nuisance as any condition established or maintained on private property by the owner or occupier of that property which tends to significantly injure the public's safety); Prior v. White, 132 Fla. 1, 180 So. 347, 355 (1938)(noting that a common law "nuisance" is anything "which either annoys, injures or endangers the comfort, health, repose or safety of the citizen, or which unlawfully interferes with or tends to obstruct, or in any way render unsafe and insecure other persons in life or in the use of their property")(quoting 3 McQuillin on Municipal Corporations, 2d Ed., p. 122)(emphasis added). As our supreme court has observed,
It is not possible to define comprehensively `nuisances' as each case must turn upon its facts and be judicially determined.... It has been said that an attempt to enumerate all nuisances would be almost the equivalent as an attempt to classify the infinite variety of ways in which one may be annoyed or impeded in the enjoyment of his rights.... To make a statute sufficiently certain to comply with constitutional requirements, it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited. Impossible standards are not required. Statutory language that conveys a definite warning as to proscribed conduct when measured by common understanding and practices satisfies due process.
Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881, 884 (Fla.1972). We conclude that the term "nuisance," as used in the city's compatibility factors, constituted a sufficiently concrete criterion to be considered by the city in determining whether to approve the proposed development. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)(determining that the legal concept of "nuisance" was sufficiently concrete to place an implied limit on the rights of a landowner regarding the use of his property and that a land use regulation which reached no further than that implied limit did not constitute a regulatory taking for which compensation would be due).
In this case, the testimony presented by local charter boat captains at the quasi judicial hearing before the city council and the arguments presented by the parties and by the city council members at the conclusion of the hearing all indicate that the city's denial of the development order was based not simply upon its determination that the proposed development would be incompatible with surrounding uses in terms of boat traffic; the denial was based upon a determination that the nature and location of the proposed development would create a serious boat navigation safety hazard at the mouth of Destin Harbor.
In Florio v. State ex rel. Epperson, 119 So.2d 305 (Fla. 2d DCA 1960), it was recognized that the state could maintain an action to abate a public nuisance against a riparian owner of property adjacent to a lake, on behalf of other riparian owners of property surrounding the lake, based on allegations that the defendant's operation *640 of a water skiing school on the lake had resulted in the lake being rendered dangerous and unsafe for use by the other riparian owners surrounding the lake. See id. at 308-309. The testimony presented by the charter boat captains in this case established that Windward's proposed development would make the mouth of Destin Harbor dangerous and unsafe for all other users of the harbor.
We reiterate that the scope of our review is limited. Under the circumstances presented in this case, we cannot conclude that the circuit court departed from the essential requirements of law in upholding the denial of Windward's application for a final development order to construct a dry-dock marina at the mouth of Destin Harbor. While the city may not have had the authority to deny the development order based simply on a determination that the boat traffic generated by the proposed development would be incompatible with surrounding uses, the city did have the authority to deny the development order based on its determination that the proposed development would have created a significant navigation safety hazard at the mouth of Destin Harbor. Accordingly, Windward's petition for certiorari review of the circuit court's decision is denied.
MINER, J., concurs.
BENTON, J., dissents with written opinion.
BENTON, J., dissenting.
The City of Destin has a zoning ordinance pertaining specifically to marinas, which requires, among other things, that applicants obtain permission to build docks from the Army Corps of Engineers and the Department of Environmental Protection. See Destin, Fla., Ordinance 152, art. 11, §§ 11.05.00 et seq. (1997) (Marina Siting Ordinance). Even though Windward Marina, L.L.C. (Windward) established that its proposal meets all the requirements Destin's Marina Siting Ordinance lays down, the City denied Windward's application on grounds that boat traffic the proposed marina would generate would constitute a safety hazard.
In reaching this conclusion, the City Commission gave little or no weight to a letter from the Department of Environmental Protection reporting that the "Florida Marine Patrol finds that navigation at the site is unlikely to be significantly adversely impacted." The City Commission relied essentially on the testimony of three boat captains to the effect that the proposed marina's proximity to the harbor mouth would cause congestion, particularly summers at dusk as boats returned for the day. The City Commission rejected studies Windward had commissioned and projections it had made that contradicted the captains' largely anecdotal testimony. The City's findings of fact, for which the circuit court found competent substantial evidence in support, are not, however, open to question at this point. See Board of County Comm'rs v. Snyder, 627 So.2d 469 (Fla. 1993); City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982).
The narrow issue now is whether, given the Marina Siting Ordinance that is on the books, Destin is bound to allow construction of the marina, the City Commission's findings notwithstanding, and rely on operational or other even-handed restrictions to assure public safety. See Snyder, 627 So.2d at 471 ("unlike initial zoning enactments... action which entails the application of a general rule or policy to specific individuals, interests, or activities is quasi-judicial in nature").
[A] zoning ordinance must prescribe definite standards for the guidance and control of the building inspector, the zoning officials and indeed the municipal council, when by the ordinance it reserves to itself various administrative zoning powers.
North Bay Village v. Blackwell, 88 So.2d 524, 526 (Fla.1956) (emphasis supplied). "The right of the appellants should be determined, and the infringement upon them gauged, by the language of the ordinance *641 itself." Drexel v. City of Miami Beach, 64 So.2d 317, 319 (Fla.1953). See Machado v. Musgrove, 519 So.2d 629, 635 (Fla. 3d DCA 1987) ("no rule ... allows government, acting in its executive capacity, to disregard its own laws").
Like the circuit court in Effie, Inc. v. City of Ocala, 438 So.2d 506, 508 (Fla. 5th DCA 1983), the circuit court here concluded "that the city council was not required to confine itself to the enumerated items of the ordinance." Here, as in Effie, "the city has already determined that the land is suitable for the use requested by zoning it in a manner which permits that use." 438 So.2d at 509. Here, as in Effie, the trial court's judgment upholding the city's denial of the use the ordinance permits should be reversed. See Florida Mining & Materials Corp. v. City of Port Orange, 518 So.2d 311, 314 (Fla. 5th DCA 1987) (granting certiorari and reversing circuit court's decision upholding city's denial of special exception, saying "if the city wants to limit the use of large trucks on the nearby residential streets, it must utilize some uniform restriction applicable to all....").
The court today creates in effect a broad and nebulous exception to every zoning ordinance. The new exception allows denial of applications for building permits or other development orders whenever municipal authorities decide on an ad hoc basis that a use explicitly permitted by a zoning ordinance amounts to a "nuisance." A nuisance explicitly permitted by a zoning ordinance is a contradiction in terms. This new exception is at the very least at odds with the proposition that, in order to assure "equality before the law ... regulations must be standard and criteria reasonably certain." ABC Liquors, Inc. v. City of Ocala, 366 So.2d 146, 149 (Fla. 1st DCA 1979).
An applicant for approval of a location must be in a position to determine the requirements and must be afforded an opportunity to comply with them. The requirements must be of uniform application. Once the requirements are met the governing body may not refuse the application. Any standards, criteria or requirements which are subject to whimsical or capricious application or unbridled discretion will not meet the test of constitutionality.
Id. Zoning ordinances have been held unconstitutionally vague on account of language much less likely than an exception for "nuisances" to result in "capricious application." See, e.g., Henry v. Board of County Comm'rs of Putnam County, 509 So.2d 1221 (Fla. 5th DCA 1987). See also Effie; ABC Liquors; City of Homestead v. Schild, 227 So.2d 540, 542 (Fla. 3d DCA 1969) (holding the language "as it deems necessary and essential to preserve and protect the health, safety and welfare of the citizens" unconstitutionally vague).
I respectfully dissent from denial of the petition for writ of certiorari.
NOTES
[1] Contrary to the position taken by the circuit court in its order, we conclude that the legal arguments presented by Windward in these proceedings were presented and considered by the city council in the quasi judicial proceedings before that body.
[2] Nothing in the Growth Management Act would preclude a local government from regulating boat traffic to the extent that such regulation is not otherwise preempted by federal regulations. In order to do so, however, it would be necessary for such regulation to indicate that it applied to boat traffic. We note parenthetically that within the city's LDC, the city has enacted what is called the Marina Siting Ordinance which establishes the standards and procedures the city will use in regulating development, construction, and activities within and contiguous to Destin Harbor. See City of Destin, Fla., Ordinance 152, art. 11, § 11.05.00 through § 11.05.11 (1997). That provision states: "No dock shall be constructed such that it constitutes a hazard to navigation." See City of Destin, Fla., Ordinance 152, art. 11, § 11.05.00(J)(1997). Although the city did not rely on this provision in denying the land development order in this case, we feel it is worth noting that the context in which this language appears clearly indicates that the language was intended to apply only to the construction of a dock itself and not to the external effect the presence of a dock might have on boat traffic in the harbor.
[3] This case can be distinguished from the Franklin County case. In Franklin County, it was clear from the language contained in the "general objectives and policies" portion of the county's comprehensive plan that the county intended to restrict and control any development that would have a demonstrated adverse impact on the ecological well-being of Apalachicola Bay. See Franklin County, 728 So.2d at 1211. In this case, there is no language in the city's comprehensive plan indicating that it intended to restrict development based on the amount of boat traffic generated by a proposed development.