426 So.2d 1029 (1983)
CITY OF ORMOND BEACH, a Municipal Corporation, Appellant,
v.
STATE of Florida Upon the Relation of Charles J. DEL MARCO, Appellee.
No. 81-1208.
District Court of Appeal of Florida, Fifth District.
January 19, 1983.
Rehearing Denied February 17, 1983.
*1030 Henry P. Duffett of Duffett, Seps & Akers, Ormond Beach, for appellant.
J. David McFadden, Daytona Beach, for appellee.
ORFINGER, Chief Judge.
Following a trial de novo[1] after the denial by the City's Board of Adjustment of appellee's request for a variance, the trial court entered a final judgment granting appellee the requested relief. The City appeals. We affirm in part and reverse in part.
On November 3, 1980, appellee Del Marco made application to the Board of Adjustment of the City of Ormond Beach for a zoning variance to allow him to erect a windmill[2] on his oceanfront residential property for the purpose of generating electricity for his home. Appellee needed a sideyard variance to place the windmill within two feet of his north line (an eight foot sideyard is required), and a height variance to permit him to exceed by sixteen feet the maximum permitted height of thirty feet. Finding no hardship, the Board of Adjustment denied his variance request. Appellee chose to seek review de novo in the circuit court as permitted by section 163.250, Florida Statutes.
After hearing the evidence presented, the trial court concluded that:

*1031 (a) Section 163.04, Florida Statutes (1981),[3] was applicable and controlling.
(b) Section 163.225, Florida Statutes (1981), which establishes Boards of Adjustment and defines their powers is also applicable but should be read in a manner which does not prohibit or have the effect of prohibiting energy devices based on renewable resources.
(c) Petitioner's request for the variances was reasonable and that it would be unreasonable to find otherwise.
The court then granted the variances and imposed certain conditions for construction of the windmill. It subsequently awarded attorney's fees and costs to appellee. The City appeals and raises several issues which we shall touch upon.
The City first contends that section 163.04, Florida Statutes, cannot operate against a board of adjustment because that board does not adopt ordinances. We find this argument specious. The legislative intent is clearly expressed in section 163.04, when it says:
"... The legislative intent in enacting these provisions is to protect the public health, safety, and welfare, by encouraging the development and use of renewable resources in order to conserve and protect the value of land, buildings and resources by preventing the adoption of measures, which will have the ultimate effect, however unintended, of driving the costs of owning and operating commercial or residential property beyond the capacity of private owners to maintain... ." (emphasis added).
The primary guide to statutory interpretation is the determination of the legislative intent. A statute is to be construed in such manner as to ascertain and give effect to the evident interpretation of the Legislature as set forth in the statute, and where any ambiguity in the meaning or context of a statute exists, this must yield to the legislative purpose. Smith v. City of St. Petersburg, 302 So.2d 756 (Fla. 1974). It is evident that the legislature intended to prohibit the adoption or enforcement of measures which would "prohibit or [have] the effect of prohibiting the installation of ... energy devices based on renewable resources... ." If the denial of a necessary variance prohibits or has the effect of prohibiting the energy device, then such "measure" is prohibited by the statute. We agree with the trial court that section 163.04 applies here.
We also agree with the trial court that section 163.225 also applies and that each statute must be given its proper sphere of operation,[4] but we disagree with the trial *1032 court's application of this latter statute to the situation before it.
Although section 163.250 gives an aggrieved person the right to seek review of a zoning decision in the circuit court by a trial de novo, the precise power and function of the circuit court and the issues to be determined in such trial are not stated. Obviously, "trial de novo" in this context means something different than the alternative relief of certiorari which the statute permits the aggrieved party to elect. If the aggrieved party elects to seek review of the administrative action by certiorari, the record before the Board of Adjustment is examined and the scope of review of the circuit court is only to determine if the board of adjustment was acting within its jurisdiction and that in acting on the petition for a special exception the board did not depart from the essential requirements of law. Odham v. Petersen, 398 So.2d 875 (Fla. 5th DCA 1981). No new testimony or evidence is presented.
A "trial de novo" then must signify the legislative intent that circuit court review involve something more than a mere examination of the record of the board of adjustment. The "trial de novo" signifies to us the legislative intent that the circuit court take new evidence and conduct a new proceeding, not for the purpose of reviewing the action of the board of adjustment, but for the purpose of acting as the board of adjustment to review the original action of the administrative official, and to grant such relief as the board of adjustment could grant, if a proper showing is made. So, to secure relief in a trial de novo before the circuit court, the aggrieved party must make the showing required by section 163.225, and where, as here, the petition is based on hardship, the aggrieved party has the burden of demonstrating that a hardship exists.[5]
No attempt was made below to prove any hardship as to the ordinance's height or set back requirements. In fact, the final judgment finds that "Petitioner ... testified that his only hardship was to attempt to save electricity." Section 163.04 eliminates the need to prove a hardship as a basis for the property owner's desire to install the energy device, but it does not, however, mean that appellee can place the windmill where he pleases or to such height as he pleases. He must still abide by the setback and height restrictions of the zoning ordinance, unless he can demonstrate the requisites for a variance; i.e., that the variance is needed so that the windmill can operate satisfactorily.
The testimony below was that the location and height were necessary for "optimum" performance of the windmill, but that alone does not entitle petitioner to a variance. He may not be entitled to "optimum" performance, if something less than that produces satisfactory performance of the windmill.[6] The inhibition of section 163.04 is that no regulation prohibit or have the effect of prohibiting the operation of the windmill. No evidence at all was adduced below as to what location and height would produce satisfactory results. Only optimum results were discussed, so no hardship was demonstrated. Thus, the trial court did not apply a correct principle of law to the evidence presented. Appellee should have the opportunity of presenting such evidence as he deems pertinent to the issue of what variance is required for the reasonable use and performance of the windmill.
We affirm the judgment insofar as it holds that the City may not restrict or prohibit the construction and maintenance of the renewable energy source. We reverse the judgment insofar as it grants the height and sideyard variance, and remand the cause for further proceedings consistent herewith. We also set aside the awards of costs and attorney's fees to await a final determination by the trial court as to who is the "prevailing party." § 163.04.
*1033 AFFIRMED in part, REVERSED in part, and REMANDED.
DAUKSCH and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] § 163.250, Fla. Stat. (1981):

Judicial review of decisions of board of adjustment.  Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any officer, department, board, commission, or bureau of the governing body, may apply to the circuit court in the judicial circuit where the board of adjustment is located for judicial relief within thirty days after rendition of the decision by the board of adjustment. Review in the circuit court shall be either by a trial de novo, which shall be governed by the Florida Rules of Civil Procedure, or by petition for writ of certiorari, which shall be governed by the Florida Appellate Rules. The election of remedies shall lie with the appellant.
[2] § 196.012(13), Fla. Stat. (1981):

"Renewable energy source device" or "device" means any of the following equipment ...:
(J) Windmills
[3] § 163.04, Fla. Stat. (1981):

Energy devices based on renewable sources. Notwithstanding any provision of this chapter or other provision of general or special law, the adoption of an ordinance by a governing body, as those terms are defined in this chapter, which prohibits or has the effect of prohibiting the installation of solar collectors, clotheslines, or other energy devices based on renewable resources is expressly prohibited. However, this provision shall not extend to building codes. No plat or subdivision plan shall be approved or renewed, nor shall the dedication of any street or other ground be accepted, if the deed restrictions, covenants, or similar binding agreements running with the land for the lots or parcels covered by the plat or subdivision prohibit or have the effect of prohibiting solar collectors, clotheslines, or other energy devices based on renewable resources from being installed on buildings erected on the lots or parcels covered by the plat or subdivision. In any litigation arising under the provisions of this section, the prevailing party shall be entitled to costs and reasonable attorney's fees. The legislative intent in enacting these provisions is to protect the public health, safety, and welfare by encouraging the development and use of renewable resources in order to conserve and protect the value of land, buildings, and resources by preventing the adoption of measures which will have the ultimate effect, however unintended, of driving the costs of owning and operating commercial or residential property beyond the capacity of private owners to maintain. This section shall not apply to patio railings in condominiums, cooperatives, or apartments.
[4] In the City's zoning ordinance, No. 78-35, in addition to the various height and set back restrictions for various zoning districts, there was also created a Board of Adjustment with substantially the same powers as found in section 163.225. What we say about the Board of Adjustment is applicable under the city ordinance as well as under the statute.
[5] § 163.225(3)(a), Fla. Stat. (1981).
[6] Section 163.225(3)(a)5 requires a showing that the variance requested is the minimum variance that will make possible the reasonable use of the structure. "Reasonable use" should neither be the very best nor the very worst use.