Mr. W. Benjamin Fredericks City Attorney City of Eagle Lake Post Office Box 128 Eagle Lake, Florida 33839
Dear Mr. Fredericks:
This is in response to your request for an opinion on substantially the following questions:
 1. ONCE A MUNICIPALITY HAS ADOPTED THE PROVISIONS OF PART II, CH. 163, F.S., MAY THAT MUNICIPALITY NULLIFY ANY PORTION OR ALL OF THE ADOPTION ORDINANCE AND RELY ON PART I OF CH. 166?
 2. ONCE A FLORIDA MUNICIPALITY HAS ADOPTED THE PROVISIONS OF PART II, CH. 163, F.S., MAY THE GOVERNING BODY REQUIRE APPEALS OF BOARD OF ADJUSTMENT ACTIONS TO BE TAKEN TO THE GOVERNING BODY?
 3. MAY THE BOARD OF ADJUSTMENT, OPERATING UNDER THE PROVISIONS OF PART II, CH. 163, F.S., GRANT VARIANCES FROM MINIMUM LOT WIDTH REQUIREMENTS AND MINIMUM LOT AREA REQUIREMENTS WHERE THE SUBJECT LOTS WERE PLATTED PRIOR TO ADOPTION OF THE ZONING ORDINANCE AND INDIVIDUALLY FAIL TO MEET MINIMUM LOT WIDTH AND AREA REQUIREMENTS OF THE ZONING ORDINANCES?
 4. WHAT IS THE LEGISLATIVE INTENT OF s. 163.170(8), F.S., WHICH AUTHORIZES A VARIANCE "ONLY FOR HEIGHT, AREA, AND SIZE OF STRUCTURE OR SIZE OF YARDS AND OPEN SPACES"?
Initially, I note that during the 1985 legislative session, the Legislature enacted Ch. 85-55, Laws of Florida which, among other things, repeals ss. 163.160-163.315, F.S., the statutes pertinent to your inquiry. Chapter 85-55, effective October 1, 1985, with certain exceptions not pertinent to the instant inquiry, provides that it is the intent of the Legislature that this repeal should "not be interpreted to limit or restrict the powers of municipal or county officials, but shall be interpreted as a recognition of their broad statutory and constitutional powers to plan for and regulate the use of land." See, s. 20, Ch. 85-55, Laws of Florida, tentatively assigned as s. 163.3161(8), F.S. Cf., AGO 85-56. Thus, in repealing the foregoing statutory provisions, the Legislature has recognized the broad home rule powers of municipalities and counties for planning and regulating the use of land within their respective jurisdictions. However, until October 1, 1985, ss. 163.160-163.315, F.S., continue to remain in effect and to be dispositive of your inquiry.
QUESTION ONE
Sections 163.160-163.315, F.S., authorize counties and incorporated municipalities, inter alia, to plan for future development, to formulate, adopt and amend comprehensive plans as guides to future development, and to adopt and enforce zoning and subdivision regulations. Sections 163.160(1) and 163.165(1), F.S. The provisions of ss. 163.160-163.315 are supplemental and in addition to the powers exercised by governing bodies that have local or special acts relating to zoning, planning, or subdivision regulations. Section 163.160(2), F.S. The governing body of a county or municipality may, but is not required to, exercise any of the powers set out in the act; however, whenever a governing body has elected to exercise any of the powers granted by the act, such powers shall be exercised in the manner prescribed therein. Section 163.165(3), F.S.
You inquire whether a municipality which has adopted the optional provisions of Part II, Ch. 163, F.S., may nullify any portion or all of the adoption ordinance and rely on Part I of Ch. 166, F.S., implementing the home rule powers of municipalities. In considering a similar issue this office in AGO 79-40, stated that once a county has elected to adopt and proceed under the provisions of Part II, Ch. 163, governing zoning and planning, thereafter the county must proceed in compliance with Part II for all the county's planning and zoning, and any question as to any independent authority the county may have possessed prior to such adoption is moot. Accord, AGO 72-273. As this office recognized, the paramount rule for statutory construction is that legislative intent must be determined and effectuated if possible. See generally, Tyson v. Lanier, 156 So.2d 833 (Fla. 1963), and City of Ormond Beach v. State ex rel. Del Marco, 426 So.2d 1029 (5 D.C.A.Fla., 1983). Nothing in Part II, Ch. 163, F.S., however, evinces a legislative intent to allow local governments to adopt in a piecemeal fashion portions of Part II; rather an examination of the statutes indicates an intent that any election to proceed pursuant to Part II, Ch. 163, must be unequivocal and that once adopted, Part II is thereafter binding in its totality. See, e.g., s. 163.165(3), F.S., stating, inter alia, that "[w]henever a governing body shall elect to exercise any of the powers granted by this act, such powers shall be exercised in the manner hereinafter prescribed"; and s. 163.315(2), F.S., providing that "after [Part II] becomes effective in any county or municipality, such resolutions and ordinances shall be administered under the provisions of [Part II], and any amendments to any such county or municipal ordinance shall be made under the provisions of [Part II]." Thus, this office concluded in AGO 79-40 that "[o]nce a county has elected to proceed under part II, it cannot legally repeal the county's adoption and proceed independently to adopt zoning, subdivision planning, or other codes or regulations which are inconsistent with part II." Cf., Orange City Water Co. v. Town of Orange City, 188 So.2d 306 (Fla. 1966), holding that once a county had adopted the provisions of Ch. 367, F.S., pursuant to that law's local option feature for the regulation of its water and sewer systems, the county did not have the implied power to repeal its adoption; and AGO 77-92, concluding that once a governing board of a county has adopted a resolution declaring the need for a housing authority to function in the county pursuant to Ch. 421, F.S., the board is not authorized to repeal such resolution or adopt a new resolution declaring that there is no longer a need for the housing authority to function, thereby attempting to dissolve, terminate, or suspend the functioning of the county housing authority.
The conclusions reached in AGO 79-40 would appear to be equally applicable to municipalities; thus once the governing body of the municipality has elected to adopt the powers set out in Part II, Ch. 163, F.S., the governing body must comply with the provisions of that act in its entirety, and it cannot legally repeal such adoption and proceed independently to adopt zoning, planning and other codes or regulations which are inconsistent with Part II. See, s. 163.315(1), F.S., providing, inter alia, that any "incorporated municipality which, prior to September 1, 1969, had the authority to engage in planning and plan implementation from whatever source derived may continue to operate under such preexisting authority until the governing body of such . . . incorporated municipality shall declare this act to be effective therein," and s. 163.315(2), supra.
Accordingly, based upon the foregoing, I am of the opinion that once a municipality has formally adopted the provisions of ss. 163.160-163.315, F.S., such municipality may not nullify any portion or all of the adoption ordinance. After October 1, 1985, the effective date of Ch. 85-55, Laws of Florida, repealing ss. 163.160-163.315, however, a municipality may proceed to exercise its home rule powers pursuant to Ch. 166, F.S., for zoning, subdivision, and planning regulations provided such regulations are consistent with the requirements of the Local Government Comprehensive Planning and Land Development Regulation Act, s.163.3161-163.3215, F.S., as amended by Ch. 85-55, Laws of Florida.
QUESTION TWO
Section 163.220, F.S., requires the governing body of a county or municipality to create a board of adjustment as part of the zoning ordinance. Section 163.225, F.S., establishes the powers and duties of the board, which include, inter alia, hearing and deciding appeals from decisions or determinations of an administrative official in the enforcement of any zoning ordinance or regulation adopted pursuant to the act; hearing and deciding upon special exceptions; and granting variances. See also, s. 163.230, F.S., providing for the review of administrative orders by the board of adjustment; and s. 163.235, F.S., authorizing appeals to the board of adjustment from decisions of the administrative official.
Section 163.250, F.S., provides for judicial review of decisions of the board of adjustment, stating:
 Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any officer, department, board, commission, or bureau of the governing body, may apply to the circuit court in the judicial circuit where the board of adjustment is located for judicial relief within 30 days after rendition of the decision by the board of adjustment. Review in the circuit court shall be either by a trial de novo, which shall be governed by the Florida Rules of Civil Procedure, or by petition for writ of certiorari, which shall be governed by the Florida Appellate Rules. The election of remedies shall lie with the appellant. (e.s.)
It is a general maxim of statutory construction that the mention of one thing implies the exclusion of another, expressio unius est exclusio alterius. See, Dobbs v. Sea Isle Hotel, 56 So.2d 341
(Fla. 1952); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976) ("where a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned"). Section 163.250 clearly provides that decisions of the board of adjustment are reviewable in the circuit court. No provision is made in s. 163.250 or elsewhere in Part II of Ch. 163, F.S., for any additional or intermediate administrative review by the governing body of the municipality. In the absence of express statutory authorization therefor, I am constrained to conclude that no such authority exists. Accord, AGO 71-270 which construed s. 176.16, F.S., the predecessor to s. 163.250, F.S., and concluded that a zoning board's decision is reviewable only upon certiorari to the circuit court. Cf., AGO's 71-278 and 73-294. See also, 8A McQuillin Municipal Corporations s. 25.302 (3rd ed. 1976) (generally courts have power to review administrative action and determination in individual zoning cases and municipal council not authorized to divest courts of their inherent power to review action of a board of zoning appeals or other zoning administrative board in order to determine whether administrative action unlawfully impairs personal or property rights).
Accordingly, your second question is answered in the negative.
QUESTIONS THREE AND FOUR
Your third and fourth questions, which relate to the authority of the board of adjustment to grant variances, will be answered together.
After a comprehensive plan has been prepared and adopted as provided in ss. 163.190, 163.195 and 163.200, F.S., a governing body of a county or municipality may in accordance with the conditions and procedures specified in the act, enact or amend and enforce a zoning ordinance after a public hearing with due public notice. In such ordinance, the governing body may, inter alia, regulate, determine, and establish within the districts "[c]onditions under which various classes of nonconformities may continue, including authority to set fair and reasonable schedules for the elimination of nonconforming uses." Section 163.205(1)(f), F.S. This office has not been presented with any information regarding the municipality's zoning ordinance or any provision therein relating to the conditions under which various classes of nonconformities may continue. You do, however, inquire as to the board of adjustment's authority to grant variances for nonconforming lots which were platted prior to the zoning ordinance's adoption.
Section 163.170(8), F.S., defines a variance as used in connection with the provisions of ss. 163.160-163.315, F.S., dealing with zoning as
 a modification of the zoning ordinance regulations when such variance will not be contrary to the public interest and when, owing to conditions peculiar to the property and not the result of the actions of the applicant, a literal enforcement of the ordinance would result in unnecessary and undue hardship. A variance is authorized only for height, area, and size of structure or size of yards and open spaces. Establishment or expansion of a use otherwise prohibited shall not be allowed by variance nor shall a variance be granted because of the presence of nonconformities in the zoning district or classification or in adjoining zoning districts or classifications.
Section 163.225(3)(a), F.S., authorizes the board of adjustment to authorize upon appeal variances from the terms of the zoning ordinance as will not be contrary to the public interest when, owing to special conditions, a literal enforcement of the provisions of the ordinance would result in unnecessary and undue hardship. However, in order to authorize any variance from the terms of the ordinance, the board of adjustment must find that certain special conditions and circumstances exist. Such special conditions and circumstances must be peculiar to the land, structure, or building involved and must not be applicable to other lands or structures in the same zoning district. Section 163.225(3)(a)1., F.S. Cf., Elwyn v. City of Miami, 113 So.2d 849
(3 D.C.A.Fla., 1959), cert. denied, 116 So.2d 773 (Fla. 1959) (difficulties or hardships must be unique to parcel involved in application for variance and not general in character. If hardship is common, correct remedy is to seek change in zoning for entire neighborhood rather than variance for individual parcel). The special conditions and circumstances must not result from the actions of the applicant, s. 163.225(3)(a)2., F.S.; hence a self created hardship will not support a variance. See generally, Josephson v. Autrey, 96 So.2d 784, 789 (Fla. 1957), aff'd,99 So.2d 230 (Fla. 1957) ("When the owner himself by his own conduct creates the exact hardship which he alleges to exist, he certainly should not be permitted to take advantage of it"). See also, City of Miami Beach v. Greater Miami Hebrew Academy, 108 So.2d 50 (3 D.C.A.Fla., 1958), cert. denied, 113 So.2d 229 (Fla. 1959), wherein the appellate court upheld the disallowance of a variance to build a school where the evidence revealed that the applicant was aware of zoning restrictions when it purchased the property.
In addition, the granting of the variance must not confer any special privilege upon the applicant. Section 163.225(3)(a)3., F.S. The board of adjustment must also find that a literal interpretation of the zoning ordinance will work unnecessary and undue hardship upon the applicant. Section 163.225(3)(a)4., F.S. The variance granted must be the minimum variance that will make possible the reasonable use of the applicant's land or structure, s. 163.225(3)(a)5., F.S., and must be harmonious with the intent and purpose of the ordinance and noninjurious to the surrounding land or detrimental to the public welfare, s. 163.225(3)(a)6., F.S. See, s. 163.225(3)(b) and (c), F.S., respectively providing that the board, in granting any variance, may prescribe appropriate conditions and safeguards in conformity with the act and any ordinance enacted thereunder and may prescribe a reasonable time period within which action for which the variance is required shall be begun or completed or both. Cf., Troup v. Bird, 53 So.2d 717 (Fla. 1951) (power to vary application of zoning regulations or to permit special exceptions thereto, is commonly expressly limited to such variations or exceptions as are consistent or in harmony with, or not subversive or in derogation of the spirit, intent, purpose or general plan of such regulations). See also, s. 163.225(3)(d), F.S., which severely limits the board's authority to grant variances for uses expressly or by implication prohibited by the zoning ordinance.
Accordingly, s. 163.225(3), F.S., specifies the criteria to be used by the board of adjustment in granting a variance as defined in s. 163.170(8) from the terms of a zoning ordinance. In order for a board of adjustment to grant a variance pursuant to Part II, Ch. 163, F.S., such conditions and circumstances must have been met. You inquire as to the legislative intent of s. 163.170(8), which in defining "variance," authorizes a variance only for height, area, size of structure or size of yards and open spaces. Where the language of a statute is clear and unequivocal, the legislative intent may be gleaned from the words used without applying incidental rules of construction. See, Holly v. Auld,450 So.2d 217 (Fla. 1984); Reino v. State, 352 So.2d 853 (Fla. 1977); Goddard v. State, 438 So.2d 110 (1 D.C.A., 1983) (where language of statute is plain, resort to rules of statutory interpretation is unnecessary to ascertain intent as Legislature held to have intended that which is plainly expressed). By applying the foregoing rules to your inquiries, I am of the opinion that ss. 163.170(8) and 163.225(3) clearly set forth the conditions and circumstances under which a variance may be granted by the board of adjustment.
Finally, it should be noted that once a municipality has adopted a comprehensive plan or element or portion thereof under the Local Government Comprehensive Planning and Land Development Act, ss.163.3161-163.3215, F.S., as amended by Chs. 84-254 and 85-55, Laws of Florida, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted. See, s. 163.3194(1)(a), F.S., as amended by s. 11, Ch. 85-55, Laws of Florida. Cf., AGO 85-56. Section 163.3164(5), F.S., defines development order as any order granting, denying or granting with conditions an application for a development permit. Variances are expressly included within the definition of development permits. Section 163.3164(6), F.S. Cf., AGO 79-88. Therefore, any variance granted must be consistent with the comprehensive plan. Cf., s. 163.3194(3)(a), F.S., as created by s. 11, Ch. 85-55, Laws of Florida. See also, s.163.3215(1), F.S., as created by s. 18, Ch. 85-55, Laws of Florida, effective October 1, 1985, authorizing any aggrieved or adversely affected party to maintain an action to prevent a local government from materially altering the use or density or intensity of use on a particular piece of property that is not consistent with the comprehensive plan.
In summary, it is my opinion until and unless judicially or legislatively determined otherwise that once a municipality has elected to adopt the provisions of Part II, Ch. 163, F.S., the municipality may not nullify any portion or all of its adoption ordinance but must proceed in compliance with Part II of Ch. 163 for all the municipality's planning and zoning. Therefore, the governing body of the municipality may not require appeals of board of adjustment actions to be taken to the governing body, and the board of adjustment may only grant variances as defined in s. 163.170(8) from the zoning ordinance upon a determination that the conditions and circumstances specified in s. 163.225(3) have been met. Effective October 1, 1985, however, the provisions of ss. 163.160-163.315 have been repealed and a municipality may exercise its home rule powers for planning and regulating the use of land within its jurisdiction provided that all development undertaken by and all action taken in regard to land covered by the comprehensive plan or element adopted pursuant to the Local Government Comprehensive Planning and Land Development Act, ss.163.3161-163.3215, as amended, be consistent with such plan or element as adopted.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General