358 So.2d 168 (1978)
HARRINGTON & COMPANY, INC., Appellant,
v.
TAMPA PORT AUTHORITY, Appellee.
No. 50011.
Supreme Court of Florida.
January 19, 1978.
Grover C. Freeman, Al R. Lopez, Jr. and Mark F. Kelly of Freeman & Lopez, Tampa, for appellant.
T. Terrell Sessums of Albritton, Sessums & Didio, Tampa, and Byrne Litschgi of Shackleford, Farrior, Stallings & Evans, Tampa, for appellee.
ENGLAND, Justice.
At issue in this appeal is the constitutionality of Section 310.28, Florida Statutes (1973), which provides in relevant part that each duly constituted board of port wardens and pilot commissioners (or port authority)
"may grant such number of licenses to competent and trustworthy persons to act as stevedores in the port and harbor ... as it may deem necessary, having due regard to the business of the port and harbor."[1]
The trial court expressly upheld the validity of the statute, prompting a review of that order here.[2]
Harrington & Co., Inc. is a stevedore presently operating under license in several southern ports, including Florida locations other than Tampa. In 1974 Harrington applied for a license to do business in the Port of Tampa as a stevedore and marine terminal operator. After a review of its application and public hearings on the matter, the Tampa Port Authority concluded that Harrington met the statutory requirements of competence and trustworthiness, but denied the license on the ground that, due to a decline in port business and the general *169 economy, the licensing of another Tampa operator was unnecessary and would be contrary to the public interest. Harrington petitioned the circuit court for a writ of certiorari, alleging among other matters that Section 310.28 is unconstitutionally vague in that it delegates to the Port Authority a licensing power susceptible to discriminatory exercise. The circuit court denied Harrington's petition and, in affirming the Port Authority's action, expressly upheld the challenged statute.[3]
Neither party disputes the Legislature's power to limit stevedore licenses or to delegate that power within guidelines sufficiently defined to ensure against arbitrary action by its designated agent.[4] Harrington contends, however, that a statute which authorizes an agency to grant or deny a license on the basis of nothing more than "due regard" for the general economic consequences of its action lacks the precise standards necessary to prevent a discriminatory exercise of licensing authority.[5] Harrington relies principally on our decisions in Dickinson v. State, 227 So.2d 36 (Fla. 1969), and Drexel v. City of Miami Beach, 64 So.2d 317 (Fla. 1953), dealing with excessive delegations of legislative authority.
In Dickinson, we considered a challenge to a statute which delegated to the state comptroller the authority to license cemetery operators. The statute directed him to investigate:
"The need for a cemetery in the community to be located, giving consideration to the adequacy of existing facilities and the need for further facilities in the area to be served."[6]
The applicants in that case had met all statutory requirements for a cemetery license, but had failed to convince the comptroller that there existed a need for further facilities in the area. We there held the absence of a suitable definition for two critical terms  "need for a cemetery" and "need for further facilities"  rendered the licensing authority so susceptible to arbitrary application as to require its invalidation.[7]
Drexel involved an attack upon a city ordinance by property owners after a denial of their application for a permit to build a parking garage. The ordinance provided that no multilevel garage could be constructed except upon "approval and permit by the City Council ... after a public hearing at which due consideration shall be given to the effect upon traffic of the proposed use... ."[8] Although the Court found nothing to indicate that the exercise of that authority had in fact been colored by "favoritism", the ordinance was nonetheless held invalid for lack of adequate standards to guide the exercise of administrative discretion. Writing for a unanimous Court, Justice Thomas explained:
"We think a [governmental body] may not deprive a person of his property by declining a permit ... where the only restriction on the use of the police power is that it shall not be exercised before `due consideration' is given . . to the effect of the building upon traffic. Both the quoted words, as well as their synonyms, could be construed to allow all *170 manner of latitude in the grant of a permit in one case and the denial of a permit in a similar one, and would give every opportunity for the exercise of the power with partiality. Such laxness and inexactness in a delegation of the power is not sanctioned by the courts."[9]
Dickinson and Drexel clearly control this case for the reasons there expressed. See also Delta Truck Brokers, Inc. v. King, 142 So.2d 273 (Fla. 1962). Indeed, the constitutional difficulties urged by Harrington were forecast in State ex rel. Biscayne Stevedoring Co. v. Turner, 143 Fla. 424, 196 So. 816 (1940), where we said of this statute's predecessor:
"[I]f this section ... is to be construed as vesting in the Port Authority acting as a Pilot Commission authority to license or refuse to license competent and reliable contracting stevedores at their pleasure, ... or at their pleasure to permit one stevedore to operate at the Port while another equally qualified is denied, said section ..., so construed, would come in conflict with sections 1 and 12 of the Declaration of Rights and the Fourteenth Amendment to the Federal Constitution."[10]
The Port Authority contends that although the statute standing alone may lack standards of sufficient specificity to pass constitutional muster, its validity can be sustained by incorporating other related legislative enactments which, when read in conjunction with Section 310.28, reveal a comprehensive scheme of legislative guidelines adequate to safeguard against administrative capriciousness. Particular reference is made to Chapter 23338, Section 7, Laws of Florida (1945).
We agree that related enactments may be read together with a particular statute so as to cure ambiguities or omissions that would otherwise render it fatally defective.[11] The provisions to which the Port Authority has directed our attention, however, in no wise provide the suggested cure. Chapter 23338, Section 7, Laws of Florida (1945) sets out in some detail the various powers granted to the Port Authority in connection with its "specific responsibility of planning, and carrying out plans, for the long range development of the facilities of and traffic through the Port in the Port District." Other cited enactments contain similar general statements reflecting the broad objectives of the Legislature in creating the Port Authority, and recognizing the port industry as a vital commercial enterprise which is essential to the public welfare in this state.[12]
Without detracting to any degree from the importance of the Port Authority's functions, the fact remains that the Legislature has nowhere provided the clear and specific guidelines necessary to ensure that those licensed to perform these functions are not arbitrarily selected. This delegation of undefined power by the Legislature is tantamount to an abdication of its lawmaking responsibility, and cannot stand in the face of Article III, Section 1 of the Florida Constitution.[13]
The order of the trial court affirming the Port Authority's action on Harrington's application and sustaining the validity of Section 310.28, Florida Statutes (1973), is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
OVERTON, C.J., and ADKINS, SUNDBERG, HATCHETT and KARL, JJ., concur.
BOYD, J., dissents.
NOTES
[1] This section was reworded and renumbered in connection with the 1975 general revision of the Ports and Harbors statutes, Ch. 75-201, Laws of Florida, and now appears as § 311.021, Fla. Stat. (1975). Although some of the language has been changed, that portion of the statute at issue in the present case remains substantially unaltered.
[2] Art. V, § 3(b)(1), Fla. Const.
[3] Here, as in the circuit court, Harrington has raised other issues ranging from the validity of certain regulations promulgated by the Port Authority to the adequacy of the evidence on which the denial of its application was based. In light of our disposition of the constitutional question, we need not address these other issues.
[4] Delta Truck Brokers, Inc. v. King, 142 So.2d 273 (Fla. 1962).
[5] Harrington further asserts that the Port Authority's refusal to grant a license after it had determined that the applicant was both competent and trustworthy constitutes an arbitrary denial of the right to engage in a lawful business and a deprivation of due process of law. We need not reach these additional assertions.
[6] § 559.39(2), Fla. Stat. (1967).
[7] In response to our decision, the Legislature amended § 559.39(2) to provide more specific criteria for the licensing authority. Ch. 76-251, § 5, Laws of Florida. The revised statute now appears as § 559.39, Fla. Stat. (Supp. 1976).
[8] 64 So.2d at 318.
[9] Id. at 319.
[10] 143 Fla. at 432, 196 So. at 819.
[11] See Florida Welding & Erection Serv., Inc. v. American Mut. Ins. Co., 285 So.2d 386 (Fla. 1973).
[12] For example, see §§ 310.001, 315.11, and 315.16, Fla. Stat. (1975).
[13] See, e.g., Husband v. Cassel, 130 So.2d 69 (Fla. 1961); State ex rel. Davis v. Fowler, 94 Fla. 752, 114 So. 435 (1927).