654 So.2d 1281 (1995)
David JONES and Joe Square, Appellants,
v.
Governor Lawton CHILES, et al., and Franklin County, Florida, Appellees.
No. 93-2590.
District Court of Appeal of Florida, First District.
May 22, 1995.
*1282 Cynthia Denise Johnson, Kristine Knab, Ann Perko, and Jack L. McLean, Jr., of Legal Services of North Florida, Inc., for appellants.
Alfred O. Shuler of Shuler and Shuler, Apalachicola, for appellee Franklin County, Fla.
BENTON, Judge.
This is an appeal from a declaratory judgment entered after disappointed applicants for submerged land leases had exhausted possibilities for administrative remedies. The submerged lands sought to be leased lie in Franklin County. The Board of Trustees of the Internal Improvement Trust Fund agreed to grant appellants leases on condition that Franklin County withdraw its objection or in the event a court determined Franklin County's objection not to be a legal impediment. The County has not withdrawn its objection. In entering the summary judgment now under review, the circuit court *1283 rejected the contention that section 253.68, Florida Statutes, is unconstitutional to the extent it gives counties "veto power" over submerged land leases. We affirm.
Appellants are alumni of a Job Training Partnership Act program designed to train unemployed oyster harvesters in aquaculture. At a cost exceeding $2,000,000.00, the program was part of an effort, authorized under state and federal law, § 446.20, Fla. Stat. (1989); 29 U.S.C. § 1651 et seq., to provide gainful employment in Franklin County. After being "certified to engage in aquaculture farming," each appellant filed with the Department of Natural Resources an application to lease one acre of the submerged bottom of Apalachicola Bay for oyster aquaculture. The County's objection applies to all applications.
At one time oyster leases were flatly prohibited in Franklin County. § 370.16(9), Fla. Stat. (1987). The lifting of the ban took place after section 253.68 was already in place. Ch. 89-175, § 19, at 703-04, Laws of Florida. On the basis of this sequence, appellants argue that removing the prohibition evinced legislative intent to foreclose objection by Franklin County (alone among the sixty-seven) to submerged land leases. We find this argument unpersuasive. Nor do we perceive any basis for disturbing the trial court's decision that neither remarks by a chairman of the county commission nor the County's cooperation with the training program afford a basis for setting aside the County's objection.
We therefore reach appellants' constitutional claims. Current law authorizes the Board of Trustees of the Internal Improvement Trust Fund to lease submerged lands for aquaculture on stated conditions, in accordance with criteria unchallenged here except for that portion of section 253.68, Florida Statutes (1993), which provides:
However, no lease shall be granted by the board when there is filed with it a resolution of objection adopted by a majority of the county commission... .
Appellants argue that this provision, unchanged from the 1991 version in effect when suit was brought, runs afoul of article III, section 1 of the Florida Constitution because "it grants the power to the county to determine what the law should be by authorizing it to decide if and when to ban the aquaculture activities of a particular lease applicant."

County's Legislative Powers
Non-charter counties like Franklin County have broad legislative powers quite apart from chapter 253, Florida Statutes (1993). County governments have legislative competence within the realm delineated by constitution and statute. E.g., Gessner v. Del-Air Corp., 154 Fla. 829, 17 So.2d 522 (1944); State v. Special Road and Bridge Dist., 153 Fla. 44, 13 So.2d 801 (1943). Within their area of competence, county commissions enjoy full legislative autonomy. E.g., Isleworth Grove Co. v. Orange County, 79 Fla. 208, 84 So. 83 (1920); Bowden v. Ricker, 70 Fla. 154, 69 So. 694 (1915).
Implementing article VIII, section 1(f) of the Florida Constitution, chapter 125, Florida Statutes (1993), confers on counties authority to
(f) Provide parks, preserves, playgrounds, recreation areas, libraries, museums, historical commissions, and other recreation and cultural facilities and programs.
(g) Prepare and enforce comprehensive plans for the development of the county.
(h) Establish, coordinate, and enforce zoning and such business regulations as are necessary for the protection of the public.
... .
(j) Establish and administer programs of ... conservation ... and navigation ... and cooperate with governmental agencies ... in the development and operation of such programs.
... .
(p) Enter into agreements with other governmental agencies within or outside the boundaries of the county for joint performance, or performance by one unit in behalf of the other, of any of either agency's authorized functions.
... .

*1284 (w) Perform any other acts not inconsistent with law, which acts are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law.
§ 125.01(1), Fla. Stat. (1993). With reference to "saltwater fish," defined to include oysters, § 370.01, Fla. Stat. (1993), section 125.01(4), Florida Statutes (1993), provides:
(4) The legislative and governing body of a county shall not have the power to regulate the taking or possession of saltwater fish ... with respect to the method of taking, size, number, season, or species. However, this subsection does not prohibit a county from prohibiting, for reasons of protecting the public health, safety, or welfare, saltwater fishing from real property owned by that county....
These "provisions ... shall be liberally construed in order to... secure for the counties the broad exercise of home rule powers authorized by the State Constitution." § 125.01(3), Fla. Stat. (1993).
The Florida Supreme Court has concluded that the legislative intent "in enacting the [then] recent amendments to Chapter 125, Florida Statutes, was to enlarge the powers of counties through home rule to govern themselves." Speer v. Olson, 367 So.2d 207, 210 (Fla. 1978). Construing chapter 125, Florida Statutes, in light of article VIII, section 1(f), Florida Constitution (1968), our supreme court explained that "the county governing body ... has full authority to act through the exercise of home rule power," Speer, 367 So.2d at 211, "[u]nless the Legislature has pre-empted a particular subject relating to county government by either general or special law." Id. Accord, Santa Rosa County v. Gulf Power Co., 635 So.2d 96, 99-100 (Fla. 1st DCA 1994) ("The only limitation on a county's implied power to act occurs if there is a general or special law clearly inconsistent with the powers delegated.") In the present case, of course, section 253.68, Florida Statutes, specifically authorizes each county to make a local (essentially legislative) decision with reference to a local natural resource.
It is no objection to a statute that it may apply in some counties but not in others on account of action or inaction by the county commissions in the various counties. With respect to a general law creating positions for probation officers in counties whose county commissions determined probation officers were needed, the court, in State ex rel. Crim v. Juvenal, 121 Fla. 69, 73, 163 So. 569, 571 (1935), found a general law
sustainable as an appropriate legislative act designed to accomplish a general public purpose in the state at large, the act to become effective pari passu in the several counties of the state according to a factual determination to be made by the Governor and by the county commissioners of the local circumstances evidencing the need of the several counties from time to time for the services of a county probation officer in such counties as may seek the appointment of such officer at the hands of the chief executive of the state.
Section 253.68, Florida Statutes (1993) similarly authorizes action by the executive branch of state government "in such counties as may seek" it. Cf. State ex rel. McLeod v. Harvey, 125 Fla. 742, 170 So. 153 (1936) (statute allowing slot machines except in counties where voters disapprove upheld).

No Unlawful Delegation
The Board of Trustees of the Internal Improvement Trust Fund within the Department of Natural Resources holds title to sovereignty lands "for the use and benefit of the people of the state pursuant to s. 7, Art. II, and s. 11, Art. X of the state constitution." § 253.001, Fla. Stat. (1993). The Board of Trustees of the Internal Improvement Trust Fund, not the counties, has executive responsibility for leasing submerged sovereignty lands. In discharging its responsibilities, the Board of Trustees of the Internal Improvement Trust Fund must act in conformity with legislative directives, just as every other agency of the executive branch must.
By acknowledging the counties' legislative prerogatives, we do not in any way "relax the doctrine of unlawful delegation of legislative power," Askew v. Cross Key Waterways, 372 So.2d 913, 918 (Fla. 1978) (reh'g denied 1979), which forbids "assigning to the executive *1285 branch ... broad discretionary authority," Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260, 263 (Fla. 1991), that our constitution has vested in the Legislature, Art. II, § 3, Art. III § 1, Fla. Const. (1968), or allowed the Legislature to delegate to city or county commissions. Art. VIII, §§ 1 and 2, Fla. Const. (1968).
Appellants rely heavily on certain language in Ex parte Lewis, 101 Fla. 624, 135 So. 147 (1931), a case decided before our current constitution was adopted. At issue there was the constitutionality of a statute that required, as a condition for a 60-day "closed season on the taking of fresh-water fish ... in waters lying in two or more counties" the concurrence of each county. Our supreme court upheld the statute saying
the power to enact a law closing fresh waters in the county for a certain season is not delegated to the county commissioners, because the declaration of the policy of a closed season is found in the terms of the statute itself.
101 Fla. at 632, 135 So. at 151. See also Stewart v. Stone, 130 So.2d 577, 579 (Fla. 1961). Appellants point out that, in enacting section 253.68, Florida Statutes (1993), the Legislature has left important policy questions to the county commissioners of the respective counties. But this does not run afoul of the 1968 constitution, as implemented by chapter 125, Florida Statutes (1993).
The appellants also rely on Harrington and Co., Inc. v. Tampa Port Auth., 358 So.2d 168 (Fla. 1978); High Ridge Management. Corp. v. State, 354 So.2d 377 (Fla. 1977); Pridgen v. Sweat, 125 Fla. 598, 170 So. 653 (1936); and Amara v. Town of Daytona Beach Shores, 181 So.2d 722 (Fla. 1st DCA 1966). The statute authorizing Tampa's port authority to license stevedores, which the court struck down in the Tampa Port Authority case, "nowhere provided the clear and specific guidelines necessary to ensure," 358 So.2d at 170, against the "delegation of undefined power by the Legislature," id., to a local executive agency, which our supreme court condemned as "tantamount to an abdication of [the Legislature's] lawmaking responsibility." Id. Apart from the "county veto" provision, the clarity and specificity of the pertinent guidelines governing the Board of Trustees of the Internal Improvement Trust Fund, the executive agency in the present case, are not at issue.
High Ridge Management. Corp. and Pridgen are similarly distinguishable because they involved delegation of legislative authority to executive agencies without adequate guidance, channeling, or restrictions. Town of Daytona Beach Shores is inapposite because the ordinance at issue there, in providing that beach concessionaires' licenses could be issued only with the approval of certain property owners, was held to be an impermissible delegation of the town's legislative authority to private individuals. 181 So.2d at 724. Section 253.68 makes no delegation either to a local executive agency or to private persons. As a legislative body in its own right, the county commission is free to exercise legislative power the Legislature has delegated to it.

No Invidious Discrimination
Appellants also contend that section 253.68, Florida Statutes (1993), is unconstitutional because it fails to prohibit county commissions' discriminating unlawfully against individual applicants. They maintain that the challenged statute permits the County to pick and choose among lease applicants for improper reasons or to act arbitrarily in deciding to which proposed leases to object. At bottom, this is an argument against the exercise of discretionary authority of any kind by local government, an argument which ignores the Florida Constitution's allocation of powers and responsibilities among state and local governmental institutions.
Lease applicants like all citizens are, of course, entitled to equal treatment under the law. Appellants' challenge, which is principally to the facial validity of the statute, entails neither allegation nor proof of unequal treatment, however. The amended petition for declaratory and injunctive relief makes no allegation that the County discriminated among individual applicants in lodging its objection under section 253.68, Florida Statutes (1991). The county commission's resolution made blanket objection to any and *1286 all leases of submerged land for which applications were pending, treating all citizens equally. Cf. Marine Fisheries Comm'n v. Organized Fishermen of Florida, 503 So.2d 935 (Fla. 1st DCA 1987).
State action, whether taken by a county commission or by any other organ of state government is subject to the strictures imposed by the Florida and federal constitutions. We do not hold, however, that a county's particular geography may not dictate distinctions that the county commission should be free to explicate in a resolution filed under section 253.68, Florida Statutes (1993). Cf. Stewart v. Stone, supra. While lease applicants enjoy the same constitutional rights as other citizens dealing with government, we reject the contention that these rights include an automatic right to the grant of an application for a lease of submerged lands, even in the face of a lawful objection by the county involved.
JOANOS and WOLF, JJ., concur.