Mr. James G. Yaeger Lee County Attorney Post Office Box 398 Fort Myers, Florida 33902-0398
Dear Mr. Yaeger:
On behalf of the Lee County Board of County Commissioners and the Lee County Citizen Charter Review Committee, you have asked the following question:
Can the Lee County Charter be amended to provide for the nonpartisan election of the Board of County Commissioners?
In sum:
The Lee County Charter may be amended to provide for the nonpartisan election of county commission members.
Lee County became a charter county on January 1, 1997, pursuant to a referendum approving Lee County Ordinance Number 96-01, "The Lee County Home Rule Charter." Lee County Ordinance Number 96-01 was enacted pursuant to the "Optional County Charter Law," Part IV, Chapter 125, Florida Statutes.
The charter presently provides that the Board of County Commissioners ". . . shall be elected in a partisan election on a county-wide basis by the electors of the County." According to your letter, the Lee County Citizen Charter Review Committee is considering proposing an amendment to the county charter for the November 2000 general election that would change the method of election of the board of county commissioners from partisan to nonpartisan. You ask whether such a change may be made to the charter.
Article VIII, section 1, of the Florida Constitution provides for county government. This section authorizes charter governments for counties upon approval by referendum of the affected voters:
"(c) GOVERNMENT. Pursuant to general or special law, a county government may be established by charter which shall be adopted, amended or repealed only upon vote of the electors of the county in a special election called for that purpose."
Section 1(g) relates to the powers of charter governments:
"Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances."
Thus, charter counties have extensive powers of local self-government limited only to the extent that no local legislation may conflict with general law or with a special law approved by the electorate.[1]
This office and the courts have considered the issue of non-partisan elections on several occasions. In Attorney General's Opinion 79-106 the question was whether a special act could be passed providing for the nonpartisan election of county officers or county commissioners. In the response to this inquiry it was noted that Article III, section 11(a)(1), of the Florida Constitution provides that "[t]here shall be no special law or general law of local application pertaining to . . . [the] election, jurisdiction or duties of officers, except officers of municipalities, chartered counties, special districts or local governmental agencies." The effect of this provision is to require that the matters specifically enumerated may only be addressed by general laws that are not restricted to a local application by classification or otherwise.[2] Thus, the opinion concluded that laws relating to the election of county commissioners or county officers of a noncharter county must be general laws of uniform operation throughout the state. The exception from application of the constitutional provision for charter counties was not relevant to the request and was not considered in the 1979 opinion.
In 1989, the Florida Supreme Court considered a challenge to the constitutionality of a special act of the Legislature providing for nonpartisan school board elections for Martin County, in Kanev. Robbins.[3] The Court held that the special act was unconstitutional and based its determination on consideration of Article III, section 11(a)(1), Florida Constitution. The Court determined that school boards are within the scope of Article III, section 11(a)(1), Florida Constitution, and that any legislative attempt to adopt special laws relating to the election or duties of school board members would be a violation of that provision of the Constitution.
The following year, in 1990, the Court directly addressed whether the prohibition of Article III, section 11(a)(1), Florida Constitution, applies to charter counties. In School Board of PalmBeach County v. Winchester,[4] the school board, concerned about the holding in Kane, filed a complaint for declaratory relief seeking a determination of the validity of a law under which the members of the Palm Beach County School Board were elected on a nonpartisan basis. The distinguishing factor between the Kane andWinchester cases was that Palm Beach County was a charter county. In upholding the law making Palm Beach County School Board elections nonpartisan, the court stated that "[c]learly, the prohibition of article III, section 11(a)(1), is not applicable to chartered counties."[5] With the Winchester decision, the Florida Supreme Court recognized that charter counties are not subject to the limitation of Article III, section 11(a)(1), Florida Constitution, for legislation on the subjects of elections or duties of local officers.[6]
Subsequently, the Fifth District Court of Appeal, in County ofVolusia v. Quinn,[7] relied on the Winchester opinion to uphold the constitutionality of an amendment to Volusia County's home rule charter. As the court noted:
"The dispositive question here is whether chartered counties can elect their school board members on a nonpartisan basis. We are satisfied that this question has been answered in the affirmative by our supreme court in School Board of Palm Beach County v.Winchester[.]"[8]
In light of the Court's recognition that the Legislature may adopt general laws of local application and special laws providing for nonpartisan elections in charter counties,[9] and the general governmental authority of such counties pursuant to Article VIII, section 1(g), Florida Constitution, it is my opinion that a charter county may, by charter amendment, conduct its elections of officers on a nonpartisan basis.
Thus, it is my opinion that the Lee County Charter may be amended to provide for the nonpartisan election of county commission members.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Cf., Jones v. Chiles, 654 So.2d 1281 (Fla. 1st DCA 1995), in which the court stated that:
"County governments have legislative competence within the realm delineated by constitution and statute. (Citations omitted) Within their area of competence, county commissions enjoy full legislative autonomy. At 1283."
And see, Hillsborough County v. Florida Restaurant Association,Inc., 603 So.2d 587 (Fla. 1992), in which the Florida Supreme Court recognized the broad powers of self-government afforded to charter counties by Article VIII, s. 1(g), Fla. Const. 
[2] See also, AGO 69-17 (1969).
[3] 556 So.2d 1381 (Fla. 1989).
[4] 565 So.2d 1350, 1352 (Fla. 1990)
[5] Id.
[6] And see, Justice Ehrlich's dissent in the Winchester case. While Justice Ehrlich did not agree with the majority that the law was constitutional because of the timing of its adoption (it was enacted before the county became a charter county) he did comment that:
"The travesty of the whole scenario is that now that the county is chartered it no longer needs to rely on special acts of the legislature to bring about nonpartisan election of members of the school board. The county itself has the authority to enact such a provision as the one at issue. Yet it has never done so."565 So.2d at 1352.
Clearly Justice Ehrlich considered a charter county authorized by the constitutional provision to provide for nonpartisan election.
[7] 700 So.2d 474 (Fla. 5th DCA 1997).
[8] Id. at 475.
[9] Cf., State v. Grassi, 532 So.2d 1055, 1056 (Fla. 1988), in which the Florida Supreme Court stated that the language in Article VIII, section 9(e), Fla. Const., "[o]ne commissioner residing in each district shall be elected as provided by law" represents a delegation to the Legislature of the task of establishing procedures for election of county commissioners rather than the power to establish qualifications for that office.